[No. 14696. Department Two. — August 12, 1892.]

## JOHANNA BALL, ADMINISTRATRIX, ETC., RESPONDENT, *v.* PETER KEHL, APPELLANT.

WATER RIGHTS — PRESCRIPTION — CONSENT TO USE FROM WASTE-GATE OF CANAL — NOTICE OF ADVERSE RIGHT — NONSUIT. — In an action to enjoin the closing of a waste-gate to defendant's canal, brought by a plaintiff who alleges a prescriptive right to open the waste-gate and divert water from the canal, when not used to run defendant's mill, a nonsuit is properly granted, where plaintiff's evidence shows that the waste-gate was habitually opened by defendant's express or implied consent, in response to an inquiry of plaintiff as to whether they desired to use the water, and does not disclose an uninterrupted adverse user of the water for a period of five years to the knowledge of defendant and his grantors, and with notice to them of a claim of right to open the waste-gate and take the water from the canal without their consent.

ID. — BURDEN OF PROOF AS TO PRESCRIPTIVE RIGHT. — The burden of proving uninterrupted user with knowledge of the owner is on the party claiming a prescriptive right.

ID. — INTERRUPTION OF USER. — An interruption of adverse user, however slight, prevents the acquisition of title by prescription.

ID. — PERMISSIVE USE OF WATER. — The use of water by permission of the owner is not adverse.

ID. — APPROPRIATION OF WATER FROM WASTE-GATE — SECOND APPROPRIATION OF STREAM. — An appropriation of so much water as the owner of a canal may elect to discharge from his waste-gate does not include the right to take water from the canal through the waste-gate by a trespass without the owner's consent; and such appropriation does not confer the same right as that of a second appropriation of the waters of a natural stream subject to the rights of a prior appropriator.

APPEAL — WAIVER OF FINDINGS — PRESUMPTION — FAILURE TO FIND UPON MATERIAL ISSUE. — Where the record upon appeal contains findings of fact and law, it cannot be presumed that a finding upon a material issue was waived; and a failure to find upon such issue is an error for which the judgment will be reversed.

ID. — OMISSION TO FIND AS TO ADVERSE USER. — Where the plaintiff claims a prescriptive right as the basis of an injunction, a finding upon the issue as to his adverse user is material, and a judgment in his favor cannot be supported without such finding where findings are not waived.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*Willis, Cole & Craig,* and *R. E. Houghton,* for Appellant.

H. C. Rolfe, and Rowell & Rowell, for Respondent.

Vanclief, C. — The object of this action is perpetually to enjoin the defendant from closing a certain waste-gate in his canal during all such times as he may not be using the water flowing in the canal for the purpose of propelling his grist-mill, — the plaintiff claiming a prescriptive right to divert the water from the canal through the waste-gate, for the purpose of irrigating his land, whenever the water is not being used by defendant for the purpose of propelling his mill.

It is alleged in the complaint that about thirty years before the commencement of this action, the grantors of the defendant constructed a canal about one mile in length, through which they diverted water from Warm Creek, and conducted the same to their grist-mill in the county of San Bernardino, for the purpose of propelling the machinery of said mill, but until within a few days before the commencement of this action never claimed or used the water for any other purpose; that, subject to the right of defendant to use the water for all purposes of running said mill, the plaintiff, during twelve years before the commencement of this action, appropriated, claimed, and used adversely to defendant, for irrigating his land, all the water discharged from said ditch through said waste-gate, at a point about one hundred yards above said mill, "whenever the said mill was not being run or operated." And also alleged that plaintiff "is the owner of the right to the use and flow of water from said canal for irrigation, agricultural, and domestic purposes as aforesaid, whenever the same is not needed for running said mill as aforesaid, and of the right to turn said water from said canal at the place of diversion, as hereinbefore stated." The complaint then proceeds as follows: "That heretofore, to wit, on or about the tenth day of August, 1888, the defendant, without right, and while said mill was not being operated, nor the water of said canal needed or used for operating or running the same, closed the said gates in the side of said canal, and caused the

said water to flow down said canal and away from plaintiff's said premises, and deprived plaintiff of the use thereof; and defendant has ever since said last-named date caused said gates to be closed, and deprived plaintiff of the use of any of said water, notwithstanding a great portion of the time the said water has not been used or needed to run said mill, and said mill has not been run or operated; and defendant threatens to continue so to deprive plaintiff of the use of any of said water at all times, even when said mill is not being run or operated, nor said water needed for running or operating the same."

After further alleging irreparable injury as the consequence of being deprived of the use of said water, the plaintiff prays "that defendant be perpetually enjoined from closing said gate, and from depriving plaintiff of the use or flow of the water of said canal through said opening, except at such times as said water may be needed and actually used for running and operating said mill."

The answer of defendant specifically denies each allegation of the complaint, except that defendant's grantors constructed and owned the canal and mill, and specifically denies any adverse appropriation or user of the water by the plaintiff or his grantors.

Upon certain issues of fact the court found for the plaintiff; and as a conclusion of law, found that plaintiff is the owner of the right to use water "from said canal through the first waste-gate on the west side of said canal, about one hundred yards above the defendant's grist-mill, at such times as the accustomed flow of the water in said canal is not used for the propulsion and operation of said grist-mill, or for purposes incidental to or necessary for the propulsion and operation of said grist-mill," and thereupon awarded the perpetual injunction prayed for.

Defendant's motion for new trial, made on a statement of the case, was denied, and he has appealed from the judgment, and from the order denying his motion.

1. Appellant contends that the court erred in denying his motion for nonsuit, made at the close of plaintiff's evidence in chief, on the ground that such evidence did not tend to prove any appropriation or user of the water in question, adverse to the defendant or his grantors.

The cause of action stated in the complaint, if any, is based upon plaintiff's alleged right to take water from defendant's canal without defendant's permission and, against his will; and the burden of proving such right, was upon the plaintiff; since, so far as alleged in the complaint, such right was denied. It is admitted in the complaint that the vendors of the defendant constructed the canal and appropriated the water of Warm Creek to run their mill; and it is not claimed and does not appear that the capacity of the canal is greater than necessary for that purpose while the mill is running. But it is, claimed by plaintiff that the mill has not run all the time, and that, while it was not running, the defendant and his grantors had generally turned the water from the canal through a waste-gate about one hundred yards above the mill; and thence returned it to the creek through a ditch dug by themselves for that purpose; and all this appears to be true. But there was no evidence introduced by either party, before or after the motion for nonsuit, tending to prove that the plaintiff or his grantors ever, *to the knowledge of defendant or his grantors,* raised the waste-gate, or took a drop of water from the canal, without permission of the owner of the mill. It appears, however, that on some occasions when the mill was not running, the owners permitted plaintiff and others to raise the waste-gate and take water from the canal; and plaintiff's intestate — N. H. Ball — testified that on some occasions when the mill was not running, and when he could not find any one of the owners at or near the mill, he had raised the waste-gate and taken water from the canal. He said: "I have never been conceded the right to lift the waste-gate and turn the water away from the mill when the mill used it, by the previous owners or occupants of that

mill. I had raised the gate for years before when the mill was not running. I suppose that was conceded to me as a right. I never asked for permission, and they never gave it. I never asked any one to permit me to do it. I was not forbidden to do it on different occasions, for I never did it when they wanted it at the mill. I would know, because I would ask. I would frequently ask Mr. Davies when he wanted to grind or use the water, and if he did, I didn't meddle with it. .. . . . I admit, whenever they are working the mill, or working about the premises of the mill, they have a right to use this water, and I claim the right to use it when it is not necessary to run the mill. I suppose that necessity is determined by the owners of the mill; they know when they want to use it. . . . . I never constructed any ditch from the waste-gate to my premises. I think the water flowed down whenever they chose to permit it, through the sluiceway to the head of the ditch that I now claim, or my reservoir. . . . . During the time he [defendant] has been owner there [about four years], I don't know that I ever lifted that gate to let the water down, or lifted it at all. . . . . I never asked his permission. I might have told my man to go and see if he wanted to grind, and if he didn't, to let the water come down. As I told you before, I didn't want the water when the mill wanted it. . . . . I never knew the mill to run on Sunday, and Sunday is all the water I want. If they chose to run on Sunday, I wouldn't expect it. If the population here should increase, and the demand for the products of the mill increase so that it was compelled to run night and day to oblige customers, I would expect no water. I said that I have raised that gate from fifty to a hundred times,—I don't know how many times. It is not the case that on all these occasions I first obtained the permission and informed the parties operating the mill before doing so. I stated I often went to the mill to find out whether they needed the water prior to raising the gate. I often went there to see. I went up there to see if they

wanted to use it. It was times when the mill was not running, and Mr. Davies would let the water seep through, to keep the holes from drying up. I went up to see him, and if he did n't want to grind I would use it. If he was n't there and was n't grinding I would use it. I did n't claim to take it away from the mill when they wanted it, or claim any right to interfere with the mill."

According to Mr. Ball's testimony, he never claimed the right to take any water from the canal adversely to defendant or his grantors until about seventeen days before the commencement of this action. While he admits their right to use the water as they deemed necessary, and also to determine when its use by them was necessary, he does not state that they had notice that he ever took water from the canal without their consent, but only that he sometimes took it when he could not find any of the owners on or about the premises. He always sought the owners, and when he could find them, asked them whether they had any use for the water, before he took the liberty to raise their waste-gate. His own version of the circumstances under which he raised the waste-gate when the owners were present unmistakeably indicates that he did so only by their consent. His inquiry as to whether they desired to use the water was evidently intended by him, and understood by them, to be a request on his part for permission to use it. Construing his testimony as liberally as possible in his favor, there is nothing in it tending to prove that the defendant or his grantors ever had notice that he claimed the right to take water from their canal without their consent.

Mr. Ball further testified that, after having used the waste water more than six years, he posted a written notice on the waste-gate, stating that he claimed " all the waste water flowing from the mill-race," and claiming " the right to divert said water at a point at the waste-gate of said mill-race, . . . . and to conduct the same through a ditch and ditches to reservoirs, and to and

upon said lands [plaintiff's lands], *as has been heretofore done by me.*"

This notice was posted March 5, 1883, and Mr. Ball testified: " I do not know what became of that paper. . . . . I should judge that it remained there a few months until the weather took it away, as far as I know." After posting this notice, plaintiff took and used the water as he had done during six years before, and not differently; and he always diverted the water from defendant's "mill-race," at a point more than three hundred feet below the waste-gate. There is no evidence that defendant's grantors ever saw the notice, except the fact that it was posted; and according to Mr. Ball's testimony, it was destroyed before defendant purchased the property. But conceding that defendant and his grantors saw it, they were thereby notified only that plaintiff claimed " the *waste water from the 'mill-race,'* to be diverted and used *as it had been diverted and used by plaintiff* during six years before." The " mill-race " mentioned in the notice is the ditch **dug by** defendant's grantors to conduct the waste water from their waste-gate to the creek. Possibly the notice might have had the effect of giving plaintiff a right to all water discharged through the waste-gate and there abandoned by the defendant as waste water; but it contained nothing indicating that plaintiff claimed a right, under any circumstances, to divert water from defendant's canal without his permission.

Plaintiff acquired no right to open defendant's canal and take water from it, without defendant's consent, in consequence of the mere fact that defendant was not using the water at the time plaintiff took it. Such an opening of and taking water from defendant's canal was a trespass *ab initio* until after it had been openly and notoriously repeated and continued during a period of five years; and indeed, this seems to be the theory of the complaint. The motion for nonsuit raised the question whether or not the evidence substantially tends to prove that the trespass had been so committed and continued for a period of five years; and as above shown, it

would be a heavy strain upon the evidence to say that it substantially tends to prove that plaintiff was ever guilty of taking water from the canal, to the knowledge of defendant or his grantors, without their express or implied permission. However this may be, surely the evidence does not tend to prove that plaintiff continued so to take the water, even while it was not being used to run the mill, during a continuous period of five years.

The burden of proving uninterrupted user, with knowledge of the owner, is on the party claiming by prescription. (*American Co.* v. *Bradford,* 27 Cal. 361.) Interruption of adverse user, however slight, prevents acquisition of title by prescription. (*Cave* v. *Crafts,* 53 Cal. 135; *Alta Land Co.* v. *Hancock,* 85 Cal. 219; 20 Am. St. Rep. 217.) The use of water by permission of the owner is not adverse. (*Feliz* v. *Los Angeles,* 58 Cal. 74.)

The plaintiff, having failed to prove any right by prescription, can only have such right as he or his grantors acquired by appropriation of such waste water as defendant may elect to discharge through his waste-gate, which right does not include the right to take water from defendant's canal without his consent. (*Brown* v. *Mullen,* 65 Cal. 89). In this connection, it is to be observed that there is a plain and substantial distinction between the wrongful taking of water from the ditch or reservoir of another and the wrongful diversion of it from a natural stream before it enters the ditch or reservoir (*Heyneman* v. *Blake,* 19 Cal. 579; *Parks Canal & M. Co.* v. *Hoyt,* 57 Cal. 44), corresponding with the common-law distinction between trespass *vi et armis* or *de bonis asportatis* and trespass on the case. For the purpose of diverting water from Warm Creek, it would not have been necessary to break defendant's canal, nor in any mode to take from it the water therein contained, which, being in defendant's possession and under his control, had become his personal property. Had the plaintiff claimed the right to divert water from Warm Creek, instead of the right to divert the water from defendant's canal, probably the relative rights of the parties might have been

determined by the rules announced in the cases of *Ort-man* v. *Dixon,* 13 Cal. 34, and *Smith* v. *O'Hara,* 43 Cal. 371.    But those cases are only partially applicable to the facts of this case.  The plaintiff claims no right to take water from Warm Creek; and it is clear that he could have acquired no right to the water in defendant's canal by the mere diversion or appropriation thereof, involving, as it would, a trespass upon defendant's property. The only alleged right of the plaintiff is the right to divert water from defendant's canal, without his consent and against his will, at all times when it is not necessarily used by defendant to run his mill; and if acquired at all, this right could have been acquired only by uninterrupted adverse user during a period of five years.   And conceding, for the sake of the argument only, that there was an adverse user during a part of the period of five years, this fact alone would not sufficiently tend to prove an adverse user during that whole period to entitle the plaintiff to recover.

2. But there is no finding upon the issue as to adverse user; and counsel for appellant contend that for this reason the decision is against law.

The only answer to this point by respondent's counsel is, that inasmuch as the record does not show that findings were not waived, it must be presumed that they were waived.

But where, as in this case, the record contains written findings of fact and law, the presumption contended for has never been indulged.   In this case the judgment roll contains what purport to be findings of fact and law under the following recitals: "This case having been heretofore tried and submitted upon the pleadings, evidence, and briefs of counsel, the court finds the following facts."

Following this are four paragraphs of findings of fact; and under the heading " Conclusions of law " are four paragraphs of conclusions of law.

Under these circumstances, I think there is no pre-

sumption that a finding on the issue as to adverse user was waived.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

DE HAVEN, J., McFARLAND, J., SHARPSTEIN, J.

Hearing in Bank denied.