[Civ. No. 377. Third Appellate District.—November 16, 1907.]

# A. ALPER et al., Respondents, v. PATRICK TORMEY, Appellant, et al., Defendants.

EASEMENT—ADVERSE USER—PERMISSIVE USE—QUESTION OF FACT—SUPPORT OF FINDING.—Where it appears without question that the use of the easement in controversy was open, notorious, peaceable and continuous for the statutory period, and with the knowledge and acquiescence of the defendants, but appellant claims that the use was permissive and not adverse, and was a license exercised in subordination to appellant's ownership, the question of the support of a finding in favor of a title by prescription in the respondents is one of fact, not depending upon the burden of proof, and the only question is whether there is any evidence to support the findings.

ID.—PRESUMPTION OF GRANT OF EASEMENT—PAROL SALE OF RIGHT OF WAY—ADVERSE USE.—A legal grant of an easement will be presumed on proof of the use and enjoyment thereof for the period of five years. Where there was a parol sale of a right of way for a spur track to respondent's predecessor, the grantee thereof held adversely to the grantor, and the presumption of a legal grant is equivalent to a presumption that the use was adverse under a claim of a right. This presumption is sufficient evidence to support the finding of title by prescription in the respondent.

ID.—RIGHT OF WAY FOR SPUR TRACK—APPURTENANCE TO MANUFACTURING PLANT—CONDUCT OF APPELLANT.—Where the conduct of the appellant is consistent only with an understanding that the right of way for a spur track was an easement owned by respondent's predecessor as appurtenant to a manufacturing plant, and that appellant so recognized it, such conduct is a potential circumstance in determining the character of the use of the easement; and the court was authorized to find that the use was adverse under a claim of right, as against the mere testimony of appellant that it was permissive.

ID.—PAROL SALE—PRICE NOT PAID.—Where the evidence shows an attempt by parol agreement to sell the right of way, and not merely an agreement to sell in future, and the subsequent conduct of the parties shows that they considered the transaction a sale, it does not affect the case that the price was not paid, or that appellant's predecessor became insolvent and was not able to pay its debts in full.

ID.—RULE AS TO PAROL GIFT OR GRANT—POSSESSION AND USE—ABSOLUTE TITLE.—A parol gift or grant of the right of way for an easement followed by possession, use and enjoyment of it with the knowledge of the grantor or donor for over five years, invests the grantee or donee with an absolute title to the right of way or easement.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial.  W. S. Wells, Judge.

The facts are stated in the opinion of the court.

Leo F. Tormey, and R. H. Latimer, for Appellant.

Heller & Powers, and L. H. Brownstone, for Respondents.

BURNETT, J.—The action was brought to restrain defendants from interfering with plaintiffs' use and enjoyment of certain railroad spur tracks.

These spur tracks were connected with and constituted an important part of a large meat packing plant owned and operated by the Union Stock Yard Company, situated at Rodeo, Contra Costa county.

Two tracks were built, both running—one easterly and the other westerly—from the buildings of the stockyard company to the main lines of the Southern Pacific Railroad Company.

The east track, the only one in controversy here, was constructed some time prior to the other.

The land upon which said buildings were located was originally bought by one Wheeler, and there is evidence justifying the inference that Tormey sold to him the right of way for the east spur track.

Subsequently Wheeler conveyed all his rights to the said Union Stock Yard Company, which was incorporated in 1890, and Tormey became president of the corporation.

As such president, on behalf of said corporation, he executed leases and a mortgage of the corporation's property including "all the buildings . . . and appurtenances now erected or in the process of erection upon said blocks . . . and all and every railroad tracks and railroad superstructures which have heretofore and may hereafter be built by the party of the first part, leading from the line of the track of the Northern Railway Company now operated by the Southern Pacific Company and used and intended to be used in connection with the improvements and machinery in said blocks or any or either of them."

In the year 1895 the corporation was adjudged an insolvent.

Tormey, who was the largest creditor, was naturally interested in getting as much as possible for the property, and for that purpose he had a map made of it and he added the east spur track because it did not appear on the official map.

He caused blue-prints of this map to be made and circulated for the purpose of securing purchasers for the property.

Judgment was rendered for plaintiffs against the defendants.

The defendant Tormey appealed from said judgment and from the order denying his motion for a new trial.

It is not disputed that plaintiffs acquired whatever rights the said corporation had in and to the said east spur track.

The main controversy, however, is as to the sufficiency of the evidence to support the finding: "That said defendant Tormey granted to said Union Stock Yard Company, plaintiffs' predecessor in title, before or at the time said spur tracks were constructed, the right of way over the said property owned by him, on which said spur tracks are now situated for said spur tracks and for the uninterrupted use of the same, and plaintiffs and their predecessors in title have been in the continuous, open and peaceable possession of said right of way, and said spur tracks for more than nine years last past and said possession has been under a claim of title and adverse to these defendants and to all the world and defendants have had knowledge thereof."

It will not be controverted that if the evidence shows a title by prescription, this is sufficient to uphold the judgment regardless of whether a grant was actually proved.

The elements of title by prescription are so familiar as not to require restatement. We simply refer to a few of the many cases where the subject is discussed: *Barbour* v. *Pierce,* 42 Cal. 662; *Unger* v. *Mooney,* 63 Cal. 586, [49 Am. Rep. 100]; *Alta Land Co.* v. *Hancock,* 85 Cal. 226, [20 Am. St. Rep. 217, 24 Pac. 645]; *Franz* v. *Mendonca,* 131 Cal. 205, [63 Pac. 361]; *Clarke* v. *Clarke,* 133 Cal. 667, [66 Pac. 10]; *Franz* v. *Mendonca,* 146 Cal. 640, [80 Pac. 1078]; also 22 Am. & Eng. Ency. of Law, p. 1183, and notes.

There is no question here that the use of the easement was open, notorious, peaceable, continuous for the statutory period and with the knowledge and acquiescence of the defendants.

There is only one proposition concerning which there can

be any difference of opinion, and that is whether said use was under a claim of right or in subordination to and recognition of Tormey's title.

Appellant claims that the evidence shows that the use was only "permissive" and not "adverse." There is some confusion in many of the cases in the use of the term "permissive," as an adverse possession in a sense must be by permission or acquiescence of the one against whom it is invoked. But imputing to the term the meaning clearly intended of a license exercised in subordination to appellant's claim and ownership, still it is a question of fact to be determined by the trial court, and under the well-established rule its determination against appellant's contention is binding upon us if it finds any substantial basis in the evidence.

Appellant insists that the burden is upon plaintiffs to prove the easement, citing *American Co.* v. *Bradford*, 27 Cal. 361; *De Frieze* v. *Quint*, 94 Cal. 663, [28 Am. St. Rep. 151, 30 Pac. 1] ; *Ball* v. *Kehl*, 95 Cal. 613, [30 Pac. 780] ; *San Francisco & S. J. V. Ry. Co.* v. *Leviston*, 134 Cal. 412, [66 Pac. 473].

But he seems to lose sight of the fact that it is not a question here of who has the burden of proof, or whether the issue has been established by a preponderance of the evidence, but that the only consideration concerning us is whether there is *any* evidence to support the finding of the trial court.

In reviewing the action of the lower court the following obvious reflections must be taken into account. A grant of an easement will be presumed on proof of use and enjoyment for a time corresponding with the local period of limitation for quieting titles to land. (Am. & Eng. Ency. of Law, *supra.*) This, of course, is equivalent to the presumption that the use was under a claim of right as the grantee holds adversely to the grantor and not in subordination to the latter's title. This presumption is itself evidence which is sufficient to support the finding.

Again, the conduct of appellant is consistent only with the position that it was understood that the corporation owned the easement as appurtenant to its manufacturing plant. Appellant so recognized it in the execution of the instruments to which we have referred and in the blue-prints which he made and circulated. This is probably insufficient to create an estoppel but it is a potential circumstance in the

determination of the character of the use of the easement. Even if appellant had testified positively that there was no such grant and that the use was only "permissive" and not under a claim of right, we cannot say that the trial court would have been bound to so find in opposition to the adverse inferences suggested by his conduct and the said presumption.

Again, plaintiffs, to establish their case, relied largely, as far as the testimony of witnesses is concerned, upon that of appellant himself.

The court had a right to consider the fact that from his interest in the outcome he was naturally a hostile witness and there is justification for viewing his testimony in the light most favorable to respondents' contention.

In that testimony we think there is positive support for the conclusion that the use of the easement was adverse and under a claim of right.

Appellant, among other things, testified: "It was always understood by everybody that those tracks were to be used in conjunction with the slaughter-house. The tracks were put down for the use of the packing-houses. There wasn't any question about the spur tracks being used for the benefit of the packing-houses except a part of the spur tracks were on my land and it was understood that the Union Stock Yard Company should buy a piece of land from me and have it surveyed and they never paid me for it and I never gave them a deed. . . . I never heard any question as to the title of the stock yard company to any of the property that they had. It was always assessed to them. . . . The stock yard company never had any trouble with anybody about the tracks; whenever they wanted to use it they used it without anybody's objecting. . . . I never made any opposition to them building the switch because they asked my consent about it and I gave them my consent. . . . I didn't inform anybody that I claimed the land east of the town free from any easement.

"The time I tore up the tracks and made a demand for the box shucks was the first time I ever claimed to have the right to forbid anybody using the spur tracks. That was in July, 1901. . . .

"Mr. Wheeler bought seven hundred acres down towards the powder works. He said 'I want to buy eight or nine

hundred acres from you.' I said, 'Mr. Wheeler, you come down on the ground and whatever you take off the front you take right back to the county road parallel to that line of fence and *lay this track down,* and of course *this tract outside of this land was sold,*' and Mr. Wheeler said then, 'When we get this thing fixed up we will pay you for that.' ''

It would seem to be a fair inference from the foregoing that it was the intention of the parties that at the time of said conversation the title should pass from appellant to Wheeler.

It was an agreement of sale and not simply an agreement to sell in the future.

The subsequent conduct of the parties shows that they considered the transaction a sale at least to the extent of the easement and even of the small strip of land over which the spur track was laid.

It does not affect the case that the price was not paid.

It is unfortunate that the corporation became involved and presumably was not able to pay its debts in full, but this does not change the rule that "a parol gift or grant of the right of way or easement followed by possession, use and enjoyment of it, with the knowledge of the grantor or donor for over five years invests the grantee or donee with an absolute title to the right of way or easement." (*Ashley* v. *Ashley,* 4 Gray, 197; *Sumner* v. *Stevens,* 6 Met. 337; *Arbuckle* v. *Ward,* 29 Vt. 43.)

Of course, it is technically inaccurate under our practice to characterize the agreement of sale as a "parol grant," but the transaction furnished Wheeler a "color of title" and afforded convincing evidence that his possession of the easement was begun and continued under claim of right.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 16, 1907, and the following opinion was then rendered thereon:

BURNETT, J.—After a careful examination of appellants' petition herein for a rehearing of the cause before this

court, we see no reason for a modification of the views expressed in the main opinion rendered in said cause.

A rehearing is therefore denied.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 14, 1908.