[Civ. No. 6407. Third Dist. Aug. 29, 1942.]

ANASTASIA BALESTRA et al., Respondents, v. R. L. BUTTON, Appellant.

A. G. Bailey for Appellant.

Huston, Huston & Huston for Respondents.

ALLEN, J. pro tem.—This is an action for a mandatory injunction commanding and requiring defendant to restore the connection of a certain telephone line to a line known as the "Button and Griffin Line" connecting with the town of Winters' telephone exchange. From a judgment in favor of plaintiffs, defendant has appealed.

In 1920, Joseph Balestra purchased the land now owned by plaintiffs. At the time of the purchase and for some time prior thereto, defendant R. L. Button, Nancy Button and John Griffin owned and maintained a telephone line, known as the "Button and Griffin Line," extending from their respective farms to the town of Winters. An integral portion of this line was strung along poles attached to the fence on the south and east sides of the premises acquired by Balestra, Sr., at the time he acquired the same, and remained on said fence until 1926 or 1927, when that part of the line on the south fence was placed on Pacific Gas & Electric Company's poles on or about the same route as when the line was on the fence. The line continued this way until the death of Balestra, Sr., in February, 1928. Button and Griffin had, prior thereto, obtained consent in writing from Pacific Gas & Electric Company to put this line on the company's poles. Joseph K. Balestra had been living upon and was in possession of his father's land as a tenant at the time of, and for some time prior to his father's death. He continued to hold over as a tenant until February, 1930.

Joseph Balestra, Sr., had no telephone connections with the "Button and Griffin Line," nor did Joseph K. Balestra until May or June, 1928, after his father's death. Balestra, Jr., was in occupation of the dwelling and buildings on the lands and desired to establish telephone connections with the town of Winters to use same in connection with his business of operating the farm. In May or June of 1928, he applied to both Button and Griffin, and they agreed orally for the consideration of one hundred dollars ($100) to give him the right to connect with the "Button and Griffin Line" and use the same for transmission of messages to and from the Balestra premises, he to pay his portion of the upkeep. He paid the consideration, connected with said line and used it until February, 1930, paying his part of the maintenance thereof.

After his father's death, although Balestra, Jr., continued to hold over as a tenant until February, 1930, the lands went into his father's estate for administration. The descent of title from Balestra, Sr., was as follows: Antonia Balestra, his wife, took a life estate with remainder over to the children of decedent. Antonia Balestra was still living at the time of the trial of this action. Anastasia Balestra and Antonia Balestra are one and the same person. The original

complaint filed named her erroneously as "Anastasia," but after judgment and appeal, the error was discovered, and the cause was sent back to the trial court for correction, which correction was made by proper amendment.

In February, 1930, Balestra, Jr., was found to be heavily indebted to the estate. Such indebtedness was caused by non-payment of rent and two notes amounting in all to approximately twenty thousand dollars. He was called to Salinas and made a written assignment of all his right, title and interest of every kind and nature in the estate of Joseph Balestra, Sr. The assignment was made to plaintiffs subject to the life estate of Antonia Balestra, and the consideration for the assignment was the cancellation of his indebtedness to the estate. The rights in the telephone line were not mentioned in the written assignment.

At the trial of this action, over the objection of defendant, evidence was admitted attempting to show an independent, contemporaneous, oral agreement whereby the telephone line and all improvements mentioned were "turnd over" to the plaintiffs by Balestra, Jr.; the consideration therefor was also the cancellation of all debts of Joseph K. Balestra to the estate.

Joseph K. Balestra then surrendered possession of the premises, and Antonia Balestra, the life tenant, in March, 1930, entered into a written lease with one Wylie, who now holds possession of the premises as a tenant of Antonia Balestra. Joseph K. Balestra, however, occupies a dwelling on the premises under some arrangement with Wylie, either as an employee or otherwise. This point is not clear from the record.

In 1937 the portion of the Button and Griffin telephone line along the east line of the Balestra property was also placed on the Pacific Gas and Electric Company's line along the same route as the east fence. Wylie, the tenant in possession, paid his part of the cost of removal. In March, 1930, the estate of Joseph Balestra, Sr., was distributed to plaintiffs subject to the life estate of Antonia Balestra.

In May, 1937, defendant and appellant Button, being the owner of a judgment against Joseph K. Balestra, levied an execution upon, and caused to be sold thereunder, all the rights of Joseph Balestra, Jr., in and to the "Button and Griffin Line," as personal property. He purchased the same

at such sale and received a bill of sale therefor and now claims title thereto under this bill of sale. Acting on this claim he disconnected the Balestra telephone from the "Button and Griffin Line," precipitating this action.

It is appellant's claim that the right acquired by Joseph K. Balestra to connect with, and in, and to the Button and Griffin telephone line was the personal property of Joseph K. Balestra, and that it was not transferred to plaintiffs by the assignment of his interest in the Joseph Balestra estate, because it never was part of that estate; also that it did not pass by the purported contemporaneous, oral assignment because the evidence was insufficient to show such an assignment; furthermore, that no possession was taken as required by section 3440 of the Civil Code; therefore, that the title remained in Joseph K. Balestra, and passed to defendant by virtue of said execution sale.

Plaintiffs alleged in their complaint that they were the owners of the right to attach the telephone line to the Button and Griffin line, and asserted that for more than ten years prior to the filing of the action they used and operated their said telephone line by connecting it with the Button and Griffin line, and that the use of the telephone was and is necessary for the operation of said lands, and for their accommodation and that of their tenants. Button denied any interest in plaintiffs, and in a cross-complaint asserted that plaintiffs had attached their wires to the Button and Griffin line without any right, license or title so to do. The trial court rendered judgment for plaintiffs, finding them to be the owners of the right claimed in their complaint, and enjoining defendant from interfering with same.

On this appeal the first question for consideration is the nature and character of the right claimed by plaintiffs to attach their telephone to the Button and Griffin line. It seems to be conceded by the parties that such right is an easement; but appellant contends that it is an easement in gross and therefore personal property; that it was the personal property of Joseph K. Balestra, Jr., and that as such it was subject to sale on execution.

Respondents contend that it is an easement appurtenant, that when acquired by Joseph K. Balestra as tenant of the Balestra farm, it attached to the Balestra property, and passed to them with the estate of Joseph Balestra, Sr.

We are of the opinion that the right to maintain such a

line or to own an interest therein, does not necessarily depend upon the ownership of any lands. The owner of such right may or may not own lands. The right to cross over the lands of another is an easement, but no dominant tenement is necessary to support it, and it may be an easement in gross; but if this right is enjoyed with and used for the benefit of certain premises in such a manner as to be an appurtenance thereto, it may be an easement appurtenant; but whether it is an easement in gross or an easement appurtenant it is not personal property.

An "easement in gross" is defined in volume 14 of Words and Phrases, Permanent Edition, pp. 65-6, as: "A mere personal interest in real estate of another." ██ The principal distinction between an easement appurtenant and an easement in gross is that in the first there is a dominant tenement and in the second there is not. (*Chase* v. *Cram*, 39 R. I. 83 [97 Atl. 481]; *Weigold* v. *Bates*, 144 Misc. 395 [258 N. Y. Supp. 695]; *Wagner* v. *Hanna*, 38 Cal. 111 [99 Am. Dec. 351].) ██ An easement in gross is a personal right, or a right attached to the person; it is an interest in the real property of another; but it is not personal property. This has been definitely decided in this state. In *Callahan* v. *Martin*, 3 Cal. (2d) 110, 121-2 [43 P. (2d) 788, 101 A. L. R. 871], it is stated: "*Incorporeal* hereditaments in gross have been recognized as a species of estate in real property in many decisions in this state, of which we cite a few." (Then follows a long line of California cases holding that an easement in gross is real property.) The opinion continues: "In view of the decisions and the provisions of sections 14, subdivision 2, 802 and 1044 of the Civil Code, it cannot be held that the provisions of sections 658 and 662 of the Civil Code limit incorporeal hereditaments in this state to those only which are appurtenant to a dominant tenement. Section 658 lists land as a species of real property, but it does not attempt to enumerate the various estates which may exist in land, of which an incorporeal hereditament in gross is one."

██ The easement in gross or appurtenant in the instant case is not only the right to cross the land of another with poles and lines and to maintain the same and to transmit messages thereover, but also the wires, poles, insulators, etc., in place and part of the system partake of the nature of the principal and permanent thing—the easement. ██ The poles and wires

wear out and must be replaced, but the easement, whether in gross or appurtenant, continues on. The poles, wires, etc., of an electric company are real property. (*Keating Implement & Machine Co.* v. *Marshall Electric Light & Power Company,* 74 Tex. 605 [12 S. W. 489]; *Ward County Irr. Dist.* v. *Western Union Tel. Co.,* (Tex. Civ. App.) 254 S. W. 1114; *Stearns Lighting & Power Co.* v. *Central Trust Co.,* 223 Fed. 962, 967 [139 C. C. A. 442]; *Reynolds* v. *McLemore,* (Tex. Civ. App.) 241 S. W. 606.) Pipe lines in place on a right of way are real property. (*Copeland* v. *Fairview Land etc. Co.,* 165 Cal. 148 [131 Pac. 119]; *Robinson* v. *City of Glendale,* 182 Cal. 211 [187 Pac. 741].) ▮ Therefore we conclude that the right to maintain the telephone line in controversy was real property. We are also of the opinion that it was an easement appurtenant to the Balestra farm.

It is said in *Eastman* v. *Piper,* 68 Cal. App. 554, 568 [229 Pac. 1002], that "Whether an easement in a given case is appurtenant or in gross is determined mainly by the nature of the right and the intention of the parties creating it. It may be said to be a general rule that an easement is never presumed to attach to the person of the grantee when it can fairly be construed to be appurtenant to some other estate. Whenever the right in question is in its nature an appropriate and useful adjunct of the land owned by the grantee of the easement, having in view his intention as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant and not in gross. (9 Cal. Jur., p. 946, tit. 'Easements,' par. 3.)"

See, also, *Hopper* v. *Barnes,* 113 Cal. 636 [45 Pac. 874]; *Wagner* v. *Hanna,* 38 Cal. 111 [99 Am. Dec. 354]; *Nay* v. *Bernard,* 40 Cal. App. 364 [180 Pac. 827]; *Gardner* v. *San Gabriel Valley Bank,* 7 Cal. App. 106 [93 Pac. 900]; *Jones* v. *Deardorff,* 4 Cal. App. 18 [87 Pac. 213]. Also, see 9 R. C. L. 741; *Jones* v. *Stevens,* 276 Mass. 318 [177 N. E. 91, 76 A. L. R. 591]; *Lindenmuth* v. *Safe Harbor W. etc. Corp.,* 309 Pa. 58 [163 Atl. 159, 89 A. L. R. 1180]; *Chase* v. *Cram, supra.*

Here the right to maintain the connection with the Button and Griffin telephone was for the benefit of the property upon which it was used; it is in its nature an appropriate and useful adjunct to the land, and the presumption is that it at-

tached thereto as an easement appurtenant. There is nothing indicating a contrary intention of the parties.

In what has been said hereinbefore, the acquisition of the easement has been assumed. Appellants contend, however, that if an easement in gross is real property then no rights were ever acquired by Joseph K. Balestra or by plaintiffs for the reason that there was no conveyance of said easement in writing, the agreement between Balestra and Button and Griffin resting only in parol.

While it is true that an oral agreement alone is ineffective to convey an interest in real property, a right initiated in parol may become perfect by prescription. (*Barbour* v. *Pierce*, 42 Cal. 657; *Alper* v. *Tormey*, 7 Cal. App. 8 [93 Pac. 402]; *Crawford* v. *Lambert*, 136 Cal. App. 617 [29 P. (2d) 428]; *Reynolds* v. *McLemore, supra;* 1 Cal. Jur. 600, § 72; 2 C. J. S. 646, § 90-c and d.)

Here the evidence shows that the parol agreement was executed, that a consideration of $100 was paid on execution of the agreement, and expenses of maintenance and improvement were thereafter paid; and that for a period of nearly ten years the Balestra telephone was used on and for the benefit of the Balestra farm and its tenants under claim of right. This evidence is sufficient to support a title by prescription (which can be acquired by a tenant for his landlord [1 Cal. Jur. 546]), which, as above stated, became appurtenant to the land and runs with it.

Such being the case it is of no importance whether there was any assignment, either written or oral, made by Joseph K. Balestra to plaintiffs, for the right acquired was real property, and being an easement appurtenant it followed the land without necessity for any conveyance by him, and if he had any interest in it by his written assignment of his interest in his father's estate he divested himself of it. At any event, being an interest in real property Button acquired no interest in or right thereto by his bill of sale.

We therefore conclude that there was sufficient evidence to support the judgment of the trial court, and it is affirmed accordingly.

Thompson, J., and Adams, P. J., concurred.