[Civ. No. 12768. First Dist., Div. One. June 25, 1945.]

WILLIAM CHAPMAN, as Executor, etc., et al., Appellants, v. SKY L'ONDA MUTUAL WATER COMPANY (a Corporation) et al., Respondents.

669

Carl William Anderson for Appellants.

U. S. Webb and Hester Webb for Respondents.

PETERS, P. J.—This action in ejectment was instituted by plaintiff Frank F. Chapman, against the Sky L'Onda Mutual Water Company to oust that company from three acres of land in San Mateo County, used by the defendant for many years as reservoir sites. Subsequent to the trial Chapman died and his executor and executrix have been substituted as plaintiffs. The defendant claims an easement by adverse possession and also urges that, because of Chapman's conduct, plaintiffs are estopped to assert a right to possession. Chapman's legal title to the property was admitted by the pleadings. The trial court determined that the defendant water company has an easement by prescription to maintain reservoirs, pumps and pipe lines on the land in question, and that plaintiffs are estopped by reason of Chapman's conduct to assert any right to possession. From this judgment plaintiffs appeal, contending that the evidence shows, without contradiction, that the use by the corporation was permissive, and that the finding of estoppel is totally unsupported by the evidence.

Defendant is a mutual water company organized in 1931 to supply water to the lot owners near the reservoir site. Its stockholders are the one hundred and five lot owners in the area, each lot being entitled to one share of stock, which is appurtenant to the land. The corporation supplies its consumers with their only available water supply. The corporation filed its articles of incorporation in January, 1932, and immediately thereafter went into possession of the reservoirs, dams, pumps and pipe lines constituting the water system and including the three acres here involved. It hired a maintenance man. Consumers paid their bills to the corporation. It made extensive improvements to its system during the period 1936 to 1938 and enlarged and improved the dam. It cleaned out the lake in 1937. From January, 1932, until the filing of this action in July of 1941 it has been continuously in possession of the property in question, has maintained the water system, made necessary repairs and improvements thereto, and distributed the water to its consumers. It was stipulated that the lot owners have erected improvements valued at $100,000 on their properties. Chapman did not

commence this action until nine and one-half years after the corporation was organized and took possession of the property.

Plaintiffs' contentions are mainly built around the argument that the acts of certain individuals were, in law, the acts of the corporation, and that, because these persons recognized the superior rights of Chapman, it necessarily follows that the possession of the corporation was permissive. As will be pointed out, this contention is without merit.

The record shows the following: For over fifty years prior to the commencement of this action Chapman had owned several hundred acres of land, including the three acres here involved, in San Mateo County. La Honda Creek runs through a portion of the lands, as do two highways, the Skyline Boulevard and the Woodside-La Honda Road. The land is useless for cultivation or grazing. Prior to 1929 the only income Chapman had received by reason of his ownership was a total of about $10,000, received from the sale of tan bark, and small sums received from campers and picnickers.

In 1929 one C. S. Crary determined to try to subdivide a portion of the area and to sell lots to those who desired to erect summer homes. In May of that year he entered into a contract to purchase from Chapman the portion of the Chapman lands lying east of the Woodside-La Honda Road. The three acres here involved lie west of that road. That contract has been lost, was not recorded, and its exact terms are not entirely clear. Under this contract the portion of the lands involved was subdivided and title to the area was escrowed with the California Pacific Title and Trust Company. This contract covered the tracts designated on a map introduced into evidence as Sky-L'Onda Tracts 1, 2, 3 and 4. As each lot was sold by Crary, Chapman was paid a portion of the purchase price, and a deed was given to each purchaser by the title company.

Shortly after the first contract was entered into a second contract was entered into by Crary and Chapman relating to another portion of the Chapman lands. This contract had also been lost and was not recorded. It granted to Crary an option to purchase the Chapman lands lying west of the Woodside-La Honda Road on certain terms and conditions. Included within the lands covered by the option are the three acres here involved.

In April, 1930, Chapman deeded to Crary the unsold portions of subdivisions 1 and 2 lying east of the Woodside-

La Honda Road, and also a twelve and one-half acre strip on La Honda Creek lying west of the road and shown on the map as the Werner Schoop Strip. The three acres here involved were not included in the twelve and one-half acres. These deeds were executed so that Crary could negotiate a loan on the properties. Crary negotiated such a loan from a building and loan association and Chapman received $17,456.22 on the deal. Prior to October, 1931, Subdivisions 3 and 4 were likewise deeded to Crary. Everyone concerned knew that Crary intended to subdivide and that water was indispensable for such a project.

Shortly after starting the project Crary ran into difficulties in supplying his purchasers with adequate water. It was originally contemplated by both Crary and Chapman that Crary could secure an adequate supply from the creek as it ran through the twelve and one-half acre strip deeded to Crary as above-mentioned. In the dry seasons of 1929 and 1930 this source of supply proved to be insufficient and Crary was forced to pump water to the lot owners from another tract owned by him east of Skyline Boulevard.

In 1930 or 1931 Crary, without Chapman's consent, entered on the land owned by Chapman west of the Woodside-La Honda Road and which was covered by the option, and cleared the trees and stumps from the sites where the reservoirs are now located. He constructed two dams in the area. It is these reservoir sites that are the subject of this action. The original entry by Crary was clearly without the knowledge or consent of Chapman.

In December, 1931, the defendant corporation was organized as a mutual water company with Crary, his son, and one Watt as the first board of directors. In January, 1932, its articles of incorporation were filed. Thereafter, the corporation entered into possession of the entire water system, operated and maintained it, and undertook the duty of supplying water to its stockholders. It is the contention of the defendant that its entry took place at that time and that its possession of the reservoirs and other facilities was then and still is adverse to Chapman. This theory is amply supported by the record.

In an attempt to show that defendant's possession was permissive and not adverse, plaintiffs rely on certain evidence that indicates that Crary and Watt recognized the superior title and rights of Chapman. There can be little doubt that, were

this an action between Crary or Watt on the one hand and Chapman on the other, Chapman would probably prevail. The evidence shows that in July, 1932, Chapman and Crary entered into a modification of the May, 1929, agreement by which the time of payment was extended to June 1, 1935, and which provided that Chapman "shall not be required to deed or release to Crary any land comprising the normal bed of La Honda Creek unless and until Crary has fully paid all sums, both of principal and interest, due or to become due under the terms of said agreement of May 1, 1929, as modified by this agreement. . . ." The parties did not record this modifying contract. Thereafter, Crary defaulted on his contracts. In 1932 or 1933, with Chapman's consent, all of Crary's contracts were assigned to Watt. In July of 1933 Chapman deeded to Watt the balance of the lots in tract five, and in November of 1933 quitclaimed to Watt all of the water rights in that tract. That tract lies east of the La Honda-Woodside Road. Watt and the title company immediately conveyed these water rights to the defendant corporation.

In March of 1935 Chapman conveyed to Watt certain of the other lands involved, but not including the three acres here involved. In fact, this deed specifically excepted the reservoir sites and excepted a ten-foot strip on either side of the creek. These excepted areas, according to the contract, were conveyed to the title company under an agreement providing that title thereto was to be conveyed to Watt only after the remainder of the tract was paid for. Chapman took back a deed of trust. Watt attempted to carry on but finally defaulted. A foreclosure sale was had and Chapman became the purchaser, receiving a trustee's deed in November, 1938. This action was thereafter commenced by Chapman in July of 1941.

This evidence supports the contention of plaintiffs that Crary and Watt recognized the superior title and right of Chapman, and it is upon this evidence that the main reliance is had to compel a reversal. However, the corporation defendant is a legal entity separate and distinct from Crary and Watt, and, under the circumstances, we do not think we are compelled, as a matter of law, to disregard the corporate entity. We think the evidence supports the trial court's conclusion that the corporation has gained an easement to operate its facilities on the area in question.

All concerned with this appeal admit that plaintiffs have

legal title to the area which is the subject of this litigation. At the trial the defendant water company proved that since 1932 it has had exclusive possession of its facilities located thereon, and that since that date it has operated the pumps and maintained and improved the reservoirs without interruption or protest by Chapman. Crary was dead at the time of trial, and Watt could not be located. Chapman was called on behalf of both plaintiffs and defendants. His testimony is most significant. He testified that he had never consented to the building of the dams or reservoirs; that he knew the corporation was operating the system; that he knew Watt, Crary and Crary's son; that he did not know who the first directors of the corporation were. None of the contracts with Crary or Watt was made in the name of the corporation, and it is quite significant that Chapman did not testify that he even thought that he was dealing with the corporation. At one time he testified that he always objected to the dams and reservoirs, and, at another, that he permitted their maintenance. But there is not one word of testimony that he ever expressed such permission to the corporation.

Plaintiffs point out that Crary's original possession was acquired while he had an option to purchase, and urge that possession so secured is not adverse. With this contention we are inclined to agree. It is true that Crary's option did not give him a right to possession of the property, and that the original entry was without the knowledge of Chapman, he being in Mexico at the time. But we think it is the law that in the absence of clear notice by the optionee that he is holding adverse to the optioner such possession should be presumed not to be adverse. It is the law that possession under a contract of purchase is not usually adverse to the title holder. (*Kerns* v. *Dean*, 77 Cal. 555 [19 P. 817]; *Woodard* v. *Hennegan*, 128 Cal. 293 [60 P. 769].) While it is true that Crary did not enter under a contract to purchase, but while merely holding an option to purchase, the same principles would seem to be applicable. There seems to be remarkably few authorities on this subject. In the only case we have found involving a claim to title by adverse possession where the entry was made under an option, the option gave the right of possession to the optionee. (*Harison* v. *Caswell*, 17 App. Div. 252 [45 N.Y.S. 560].) However, on principle, it would seem that entry and possession by an optionee, even where the right to possession is not expressly given, would be an entry

by one who had, by accepting the option, recognized the superior title of the optioner. Hence, it would seem clear that, in the absence of clear notice to the optioner that the optionee was claiming adversely, it would be presumed such possession was not adverse. But this discussion of the nature of Crary's possession is beside the point. If it be conceded that the option contract was a recognition by Crary of Chapman's right, there is no evidence at all that Crary or Chapman intended to bind the corporation by that contract or by any of the others. The option contract, and the other contracts above mentioned, were not made in the name of the corporation, but were entered into by Crary and in his name for his own private purposes.

■ It must be remembered that promoters are not the corporation, and that their contracts do not necessarily bind the corporation even though, after the subsequent organization of the corporation, they become the sole directors or officers. The rule, amply supported by authorities, is stated as follows in 6A California Jurisprudence 300, section 156:

"A corporation cannot be held liable for the acts of its promoters nor be obligated by their conduct and contracts towards or with others in the absence of . . . adoption of such conduct or contracts by the corporation after it comes into existence. The reason for this rule is that the promoters are not the corporation and their contracts cannot be its contracts, and this is so, even though the promoters become, upon the creation of the corporation, its sole stockholders, directors and officers. . . .

". . . Ratification will not be presumed even where the corporation has received the benefits, unless actual knowledge of the specific contract out of which the benefits arose is made to appear."

■ It must be remembered that Crary's option contract, upon which such reliance is had by plaintiffs, was not made for the benefit of the corporation nor was it ever accepted by it. Assuming, as was probably the fact, that Crary's entry was under the option and not based on a claim of right, there is not one word of evidence that the corporation's entry was made under any recognition of either Crary's or Chapman's rights. Chapman dealt with Crary in his private capacity and as a buyer and subdivider of real property, and not as a promoter or future director of a corporation. Under these circumstances the corporate entity should not be disregarded,

in the absence of fraud, and certainly not as a matter of law, where the corporation is a mutual water company whose stockholders hold the stock as appurtenant to their lots. The rights of those stockholders must be considered, as well as the rights of plaintiffs. Certainly Chapman did not deal with Crary as a director of the corporation. He testified that although he knew the corporation was operating the reservoirs that he did not know who the first directors of that corporation were.

It is elementary law that a corporation is responsible only for those acts of its officers or agents which have been done in its name and not for those done in the individual names of its officers or agents in their own interest. (See cases collected 13 Am.Jur. § 1107, p. 1034.)

The above comments apply with even greater force to the Chapman-Watt contracts. These contracts were not made in the name, or for the benefit, of the corporation. Chapman, in entering into them, did not believe he was dealing with an agent of the corporation. In fact, there is a complete absence of evidence that Watt was even a director at the time the contracts were entered into. At least one new director—Cipperly—had taken office in 1934, or prior thereto, and the inference is that a new board was elected that year. While there was testimony that Watt was manager of the corporation at that time, the evidence also is to the effect that by "manager" was meant a mere maintenance man whose duty it was to "take care of the system, repair leaks, see that the pumps are in order, . . . that the tanks are at the proper level. He reads the meters, and that is about all."

Just as in the case of the Crary contracts the evidence is clear that Watt was acting for himself in executing his contracts, and that neither of the contracting parties had any intent to bind the corporation. It follows, of course, that, assuming that Watt recognized the superior right of Chapman, such recognition was not recognition by the corporation.

Plaintiffs contend that the evidence shows that Chapman paid the construction company's claim for labor and material in building the dams, and urge that this demonstrates that the use was permissive. The record shows that Chapman, Crary and Watt were defendants in an action instituted by the construction company to recover for such costs and to impose a mechanic's lien on the premises. The defendant corporation was not a party to the action. Crary died in 1933. The trial court sustained the demurrer of Chapman

and Watt. The complaint alleged that Crary and Watt acted as co-owners and agents for all the owners (including Chapman) of the property in constructing the dams. The Supreme Court, on September 27, 1935, reversed the judgment (*Sibley Grading etc. Co., Ltd.* v. *Crary,* 4 Cal.2d 375 [49 P.2d 823]), holding simply that the complaint stated a cause of action for labor and material furnished against all the defendants, and refrained from deciding whether it stated a cause of action to impose a lien. It is obvious, therefore, that up to September, 1935, Crary had not paid for the costs involved. Chapman did testify that he had to pay for the dam. But it is quite significant that not only was the defendant corporation not a party to this action, but it elected a new board of directors in 1935, and in the fall of that year that board sent Chapman a bill for water served him in the past, and, when he refused to pay, cut off his water supply. This would seem to indicate that the corporation did not regard the payment by Chapman of such costs, assuming it had notice of it, which does not appear, as a recognition that its possession was permissive, or that Chapman had a superior right of possession. In fact, this cutting off of Chapman's water supply in 1935, would seem to be clear evidence that the corporation was claiming not only the water but the means of distribution. Even if it be assumed, contrary to the evidence, that the corporation's original possession was permissive, this act of the corporation was an unequivocal repudiation of the premission and a claim of right to possession.

The plaintiffs urge that the evidence is insufficient to show all the elements of a title by prescription. It is undoubtedly the law that the claimant of a prescriptive right must prove all elements necessary to establish his claim, that prescriptive rights are *stricti juris,* and that such right will not be extended beyond the actual user. (*Moore* v. *California Oregon Power Co.,* 22 Cal.2d 725 [140 P.2d 798].) The burden of proof is on the one claiming by adverse possession. (*Nelson* v. *Robinson,* 47 Cal.App.2d 520 [118 P.2d 350]). It is his burden to prove an open, notorious, uninterrupted, and hostile use, continuous for the statutory period, under a claim of right. In our opinion the defendant corporation sustained this burden. The exact circumstances and the legal basis of the defendant's entry were not fully explained.

Where the circumstances of an entry are not explained, and where, as here, possession has been open, notorious and

uninterrupted for the prescriptive period, the law presumes that the holding was adverse and under a claim of right. (*Pacific Gas & E. Co.* v. *Crockett L. & C. Co.,* 70 Cal.App. 283 [233 P. 370] ; *Franz* v. *Mendonca,* 131 Cal. 205 [63 P. 361] ; *Fleming* v. *Howard,* 150 Cal. 28 [87 P. 908] ; *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10].) Moreover, it is the law that, when one who claims an easement by prescription offers satisfactory evidence that all the required elements existed, the burden of showing that the use was merely permissive shifts to the owner of the land. (*Matthiessen* v. *Grand,* 92 Cal.App. 504 [268 P. 675].) Where the claimant shows exclusive, open and notorious possession, and acts evidencing domination and control throughout the statutory period, the inference arises that the use was adverse and under a claim of right. The rule was clearly stated in *Wallace* v. *Whitmore,* 47 Cal.App.2d 369, 372 [117 P.2d 926], as follows: ''But clear and satisfactory evidence of the use of the road in that manner creates a *prima facie* title to the easement by prescription. Such evidence raises a presumption that the road is used with an adverse claim of right to do so, and in the absence of evidence of mere permissive use of the road, it will be sufficient upon which to sustain a judgment quieting title to the easement therein. In the case of *Ricioli* v. *Lynch,* 65 Cal.App. 53 [223 P. 88], the court quotes with approval from the case of *Fleming* v. *Howard,* 150 Cal. 28, 30 [87 P. 908], language supporting the previous statement of principle, as follows:

'' 'Under these circumstances it will be presumed that the use was under a claim of right and adverse, and a *prima facie* title by prescription is thereby established. . . . ''A presumption that the use was under a claim of right and adverse arises from an undisputed use of an easement for the established period of prescription; and the burden is upon the party alleging that the use has been by virtue of a license or permission, to prove that fact by affirmative evidence. . . . Where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown, if the other party relies on the fact that these acts or any part of them were permissive, it is incumbent on such party, by sufficient proof, to rebut such presumption of a non-appearing grant; otherwise the presumption stands as sufficient proof, and establishes the right.'' (Jones on Easements, sec. 186.) ' '' Many cases are cited to support the rule. It is not an indispensable requirement that the

adverse claimant show that the record owner had actual knowledge that the claimant was asserting an adverse claim. Possession so open, visible and notorious that it will raise the presumption of an adverse claim is the equivalent of actual knowledge. (*Wood* v. *Davidson,* 62 Cal.App.2d 885 [145 P.2d 659].)

The evidence here meets the tests thus set forth. The defendant corporation was in open, notorious and uninterrupted possession of the reservoir sites, and using them for almost ten years before Chapman ever objected. There is not one word of evidence that the corporation ever recognized a superior right of possession during that period in Chapman. During the entire period the corporation exercised acts of domination and control over the reservoirs and the distributing system. Chapman admitted that during this time he knew the corporation was operating the system. He also testified that since 1929 he quit pumping from the creek to his own property and thereafter had no use of the creek; that thereafter "they" took out his pipes and used them in "their" system. Moreover, the trial judge visited the premises. What he saw was, of course, evidence. He undoubtedly observed that the use of the land for reservoirs was exclusive and open. Under such circumstances, to say the least, the question as to whether or not the use was adverse and under a claim of right, or was a mere permissive use, was a question of fact, and the determination of the trier of the fact based on conflicting evidence or upon reasonable inferences from the evidence, is conclusive. (*McMorris* v. *Pagano,* 63 Cal.App.2d 446 [146 P.2d 944] ; *Redemeyer* v. *Carroll,* 21 Cal.App.2d 217 [68 P.2d 739] ; *Matthiessen* v. *Grand,* 92 Cal.App. 504 [268 P. 675] ; *Alper* v. *Tormey,* 7 Cal.App. 8 [93 P. 402] ; *Diamond Match Co.* v. *Savercool,* 218 Cal. 665 [24 P.2d 783].) This rule is not in conflict with the rule that a claimant of a prescriptive right must prove all the elements to establish his claim.

Where, as here, the claim does not originate under a written instrument, the only proof of the adverse nature of the claim of the possessor would ordinarily be proof of the nature of the occupancy and use. Where, as here, the use is open and exclusive, and the claimant has exercised control and domination of the property, and where, as here, there is no direct evidence as to the nature of the original entry, the adverse nature of the claim and the record title owner's notice of such claim will and should be presumed. The finding of the

trial court based on such presumption cannot and should not be overturned on appeal unless the evidence shows conclusively that the use was permissive. As already pointed out, the present record falls far short of so showing. There is evidence, much of it elicited by leading questions, and much of it quite vague and inconclusive, that perhaps would have sustained a finding that the use was permissive had such a finding been made. But most of this evidence related to the acts of Crary and Watt. As already pointed out, there is no evidence that either of these gentlemen purported to act on behalf· of the corporation in executing the various contracts that recognized Chapman's superior rights, and there is no evidence that even Chapman considered these contracts as binding on the corporation. There is no evidence that the corporation adopted or ratified the contracts. There is no evidence that the corporation ever recognized a superior right in Chapman; in fact, the evidence and the reasonable inferences therefrom, are to the contrary. The original entry by Crary was admittedly without Chapman's consent. When Crary and Chapman executed the July, 1932, contract the corporation was already in possession and Chapman knew it. Under such circumstance plaintiffs have failed to sustain the burden of showing the use was permissive and the finding that it was not is amply supported.

Independently of the holding that the corporation has title to the described easement by prescription the trial court found that plaintiffs were estopped, under the facts, from asserting their title. The plaintiffs challenge these findings of estoppel as being unsupported. Their entire argument is predicated upon the evidence that Crary and Watt were aware of the facts, and it is urged that, inasmuch as they were agents of the corporation, their knowledge is imputable to the corporation. The knowledge that Crary and Watt gained as individuals and not as agents for the corporation does not, as a matter of law, bind the corporation. Here the corporation expended large sums of money in improving its system, and Chapman stood by, knowing such sums were being expended, and made no objection. Whether, under such circumstances, Chapman was under a duty to speak, and whether his failure to do so estops him from asserting his title, would seem to be questions of fact. However, we do not find it necessary to decide whether the finding of estoppel is supported. It is elementary law that "if a judgment

is amply supported by findings which are unobjectionable, findings on other issues become immaterial, and it is not ground for reversal that such other findings are unsupported by evidence.'' (2 Cal.Jur. § 612, p. 1028, citing many cases.)

Nor can it successfully be contended that the finding that the corporation has title by adverse possession is necessarily inconsistent with the finding that plaintiffs are estopped from asserting their rights, if any they have. The corporation may properly assert a claim based on adverse possession, and at the same time assert that in making expenditures on the property they were relying on the owner's apparent acquiescence. It has been held that a finding of legal title and a finding of title by adverse possession, and that a finding of irrevocable license and a finding of easement by prescription are not inconsistent. (*Irrigated Valleys L. Co.* v. *Altman,* 57 Cal.App. 413 [207 P. 401].)

Plaintiffs also urge that the evidence that the dam was enlarged in 1936 or 1937 defeats the right to an easement by prescription. There is no evidence that the burden on the servient estate was increased by the change in the dam, that any larger area was flooded, or that the use was changed. The point is, therefore, without merit. (*Burris* v. *People's Ditch Co.,* 104 Cal. 248 [37 P. 922]; *Gallaher* v. *Montecito etc. W. Co.,* 101 Cal. 242 [35 P. 770].)

No question about payment of taxes is here presented. There is no evidence that the easement was assessed separately from the fee. The burden is, of course, on the party contesting the title by adverse possession to show that taxes have been assessed on the easement and that the claimant has not paid them. (*Redemeyer* v. *Carroll,* 21 Cal.App.2d 217 [68 P.2d 739]; *McMorris* v. *Pagano,* 63 Cal.App.2d 446 [146 P.2d 944].) No such showing was here made. The other points raised by plaintiffs are without merit and need not be discussed.

The judgment appealed from is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.