[Civ. No. 6363.   Third Dist.   Oct. 29, 1941.]

MARY A. NELSON et al., Appellants, v. I. N. ROBINSON et al., Respondents.

Jos. H. Huberty for Appellants.

Jones & Quinn, Levinsky & Jones and William H. Woodward for Respondents.

THE COURT.—This action was brought to quiet title to the lands of appellants; to recover damages for injury done to said property; and to abate a nuisance. The trial court found for respondents upon all issues, and the following judgment was entered:

"That the ownership and possession of the plaintiffs to the above described property is subject to the prescriptive right of defendants to permit waters to percolate, flow and seep from the ditch of defendants described in said second amended complaint under, in and upon the hereinbefore de-

scribed lands of plaintiffs to the same extent and in the same manner as they have heretofore.

"That plaintiffs are barred and forever enjoined from asserting, or claiming, any injury to the lands hereinbefore described, or to crops growing thereon, by reason of water seeping or percolating from said canal as a result of the continued operation and use of said canal, as same has been operated and used heretofore."

This appeal is taken from said judgment.

Plaintiffs are the owners of three hundred sixty-nine acres of land on Roberts Island, in the Delta Region of San Joaquin County. In 1925, defendants, who are landowners in said district, constructed an irrigation ditch to convey water to their respective parcels of land from Middle River, a branch of San Joaquin River. The ditch or canal is about 20 feet wide and four feet in depth, and it borders on the northeast property line of plaintiffs. The area which was affected by the percolating waters is some 50 acres in extent. The court found that said land was fertile and capable of raising valuable crops. It also found that "said lands and crops thereon have been visibly affected, and the injury thereto apparent commencing in the year 1926, and each year thereafter." The court found:

"That heretofore and on or about the year 1925, defendants and/or their predecessors in interest, constructed along higher ground, lying easterly of, and above described lands of plaintiffs, an irrigation canal and/or ditch which takes water by means of a pumping plant from the junction of Middle River and High Ridge Levee in the County of San Joaquin, State of California, and leads thence along the easterly base of said High Ridge Levee in a general northerly direction through the lands of defendants, Robinson, Jones, Vasquez, Woods and to the property of Armond Woods, commonly known as and called 'Honker Lake', which, said canal and/or ditch, during the times hereinafter mentioned, has been used for the purpose of conducting water therein for the irrigation of the several parcels of land of said respective defendants; that from said time, annually during each irrigation season thereafter, the defendants have operated and used said ditch for the transportation and distribution of irrigation water; that by reason of the nature of the lands through which said ditch runs, a certain amount of seepage and

percolation necessarily escapes from said ditch to the lands adjoining on both sides of said ditch; that said seepage and percolation became visible and apparent as early as the year 1926, and has annually, and during each and every irrigation season thereafter been visible and apparent; that said lands and the crops thereon have been visibly affected and the injury thereto apparent commencing in the year 1926, and each and every year thereafter; that said seepage has not increased, become worse, or involved larger areas, but has remained constant during the irrigation season; that defendants claim the right to operate said ditch in the future as it has been in the past. . . .

"That within the three years last past and immediately preceding the commencement of this action, and for many years theretofore, defendants have allowed water to percolate, seep and flow from the aforesaid canal or ditch on, in and upon lands of plaintiffs, but that said seepage did not gradually, or at all, become worse, and is not constantly, or at all, involving larger areas of the lands of plaintiffs, but that on the contrary the extent and amount of seepage was not, during the last said three years, any more, if not less, than it had been theretofore; that the use and enjoyment of said lands of plaintiffs is interfered with by a high water table, which in turn is largely caused, and has been largely caused, by periodical high water in Middle River which seeps in and under said lands of plaintiffs, and also by the irrigation of said lands of plaintiffs by the plaintiffs themselves, without providing any proper or adequate drainage therefor; that the seepage and percolation from said ditch or canal does contribute to said high water table, but the extent of such contribution has not been disclosed or established, other than that such seepage and percolation is no greater than it had been for many years prior to 1935."

The court also found that the use and enjoyment of plaintiffs' lands is interfered with by a high water table, which in turn is largely caused by periodical high water in Middle River, which seeps under said lands, and also by the irrigation of said lands by plaintiffs themselves, without providing proper drainage therefor. The court further found:

"That the said lands of plaintiffs were, and are, in a high state of cultivation, and are fertile, and are capable of raising large and valuable crops; that the fertility of said

lands has not deteriorated, and alkali and/or other destructive substances have not been caused to be deposited upon said lands; that the fluctuating, and at times high water table, is largely caused by the said seepage from Middle River and drainage resulting from plaintiffs' own irrigation, and that before plaintiffs can develop and enjoy the full productivity of their lands it will be necessary for them to properly provide for the removal of said waters that seep from Middle River and to remove the drainage waters resultant from their own irrigation; that the seepage and percolation out of and from defendants' ditch was during the irrigation season of each year practically uniform, and in and of itself caused no damage to the fertility or productivity of said lands; that it is not true that plaintiffs have been damaged in the sum of $1000.00, or any other sum, by reason, or as a result of the seepage or percolation of and from defendants' ditch; that seepage and percolation from the canal of the defendants and damage therefrom became visible and apparent to plaintiffs as early as the year 1926, and was known to them, and was visible and apparent to them at all times since 1926, during the irrigation seasons, and that the seepage and percolation out of and from defendants' canal was not, during the three years preceding the commencement of this action, any greater than it had been theretofore, if it was not less; that there has been no increased use of said canal since 1935; that the causes of action attempted to be alleged by the plaintiffs are barred by the statute of limitations of the State of California, and particularly by the provisions of subdivision 2, section 338 of the Code of Civil Procedure of the State of California. . . .

"That for more than five years last past and next immediately preceding the commencement of this action the defendants have used said ditch for irrigation purposes, and during all of said time water has to some extent seeped and percolated from said canal and through the banks and bottom thereof, and during all of said time the plaintiffs had actual notice thereof; that during all of said time defendants claimed the right to permit said seepage as a necessary incident to the use and operation of said ditch; that during all of said time the invasion of plaintiffs' lands, and injury to the crops by said seepage and percolation from defendants' canal to and under the lands of plaintiffs was open, visible, notorious

and adverse to the plaintiffs' rights and under claim of right by the defendants, and was known to be adverse by said plaintiffs."

It might be well to state the general rule governing actions of this character. The courts of this state have repeatedly held that one who permits water to percolate from his artificial canal to the property of his adjoining neighbor commits an invasion of the latter's rights for which redress is obtainable in damages, by injunction or through the abatement of a nuisance. (*Parker* v. *Larsen,* 86 Cal. 236 [24 Pac. 989, 21 Am. St. Rep. 30] ; *Stoops* v. *Pistachio,* 70 Cal. App. 772 [234 Pac. 423] ; *Kall* v. *Carruthers,* 59 Cal. App. 555 [211 Pac. 43] ; *Massetti* v. *Madera Canal & Irr. Co.,* 20 Cal. App. (2d) 708 [68 Pac. (2d) 260].)

It is contended by appellants that the evidence is insufficient to sustain the finding to the effect that defendants have acquired a right by prescription to permit them to flood plaintiffs' property by seepage and percolation. We think the position of appellants is correct. The right which is granted by the judgment is in reality an easement—"a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement, in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." (9 Cal. Jur. 943, 944, sec. 2.) "An easement always implies an interest in the land in and over which it is to be enjoyed." (Id.)

It may be acquired by prescription (9 Cal. Jur. 948, sec. 5), and the adverse use must be for a period of five years (Code of Civil Procedure, sec. 325). One of the essentials of adverse user in this case is the actual infringement of the rights of appellants for a period of time each year, for the statutory period, that is, the saturation and percolation of plaintiffs' land by seepage from defendants' canal must have been known to the former, or at least facts and circumstances must be proven from which it might be reasonably inferred that plaintiffs had such knowledge. The trial court did find that such knowledge was a fact, but the record fails to sustain such finding. The testimony shows that there were three occasions when the seepage water was visible on the surface of appellants' land. One was in the year 1925, one in 1928, and the other in 1935. The finding

that the seepage and percolation was visibly apparent each year since 1926, is wholly without support in the record. In his opinion, which is part of the record, the trial judge states:

"I am satisfied that defendants were guilty of negligence in bringing water onto their property through the ditch in question, with knowledge on their part of the porous character of the soil without making adequate provision to prevent seepage into plaintiffs' land. (*Tormey* v. *Anderson-Cottonwood Irrigation District,* 53 Cal. App. 559 [200 Pac. 814].) But I am equally well satisfied that plaintiffs knew at all times since 1926, that the seepage was going on and contributed to the water plane that rose to such height in their land as to flood it in the lower portions every time they irrigated after they planted alfalfa in 1930."

Can we assume that because water has seeped in one year, that it will continue to do so every year, and that appellants must have known this? On the contrary, it is a matter of common knowledge that porous ground is often sealed and rendered impervious to further percolation by particles of soil carried in the water. We do not believe that rights in real property can be acquired under such a showing. In 17 Am. Jur. 976, 977, sec. 65, it is said:

"The foundation of the establishment of a right by prescription is the acquiescence on the part of the owner of the servient tenement in the acts which are relied upon to establish the easement by prescription. This makes it necessary that he know of those acts, or be charged with knowledge of them if he did not in fact know of them. A person cannot establish a prescriptive right to an easement to maintain drains under the ground where continued use of the drains is not open and visible and in the absence of proof that the owner of the servient tenement had actual or constructive knowledge of the user."

The second element of adverse user which was not proven was hostility of the user—a claim asserted against the whole world. (1 Cal. Jur. 537, sec. 30.) Following the seepage which became visible in 1926, and in response to plaintiffs' demands said defendants engaged men and equipment and spent time and money on plaintiffs' land, leveling the same, and eliminated a slough which said defendants maintained full of water immediately east of defendants' lands during 1926. Thereafter, plaintiffs continuously farmed

their lands without any visible or apparent injury from water seepage until 1935. In 1935, plaintiffs' lands became saturated and flooded by seepage water from defendants' canal at or near the so-called "mailbox", about 1000 feet southerly of the 1926 invasion, whereupon plaintiffs complained to defendants about said water trespass, and as a result of which defendants employed men and dug a drainage ditch about 18 inches deep on plaintiffs' land in an effort to intercept the water percolating from defendants' canal. In 1936, there was a recurrence of seepage water against which plaintiffs again complained, whereupon defendants rented ditch digging equipment and dug a drainage ditch 3 to 4 feet deep along plaintiffs' eastern boundary, in an effort to intercept the percolating water, and installed a pump to elevate the water therefrom back into defendants' canal. Defendant Robinson testified: "I ordered the work done" in the summer of 1936. If respondents always took the position that they had a *right* to thus injure the property of appellants, they would not have taken those steps to remedy the wrong each time that complaint was made. The evidence is insufficient to establish a claim of right upon the part of respondents.

The rule as to burden of proof in this action is thus stated in 1 Cal. Jur. 636, sec. 95:

"Inasmuch as the doctrine of adverse possession is to be construed strictly, and such possession cannot be made out by inference, but only by clear and positive proof, the burden of proving all the essential elements of an adverse possession or prescriptive title is upon the party relying upon it."

We are satisfied that a perpetual right to injure the land of another by means of seepage from an irrigation canal cannot be established by evidence of the character stated, as it lacks proof of essential elements necessary to the acquisition of a prescriptive right. In 19 C. J. 880, sec. 34, it is stated:

"While it is not necessary for the party claiming an easement to make an express declaration of his claim, unless it is so provided by statute, it is not sufficient that the claim of right exists only in the mind of the person claiming; it must in some way be asserted in such a manner that the owner may know of it. In the absence of express notice or actual knowledge on the part of the owner of the land, the user by the claimant must be so visible, open, and notorious that notice or knowledge will be presumed."

■ The next question is whether or not the right of action is barred by section 338, subdivision 2 of the Code of Civil Procedure, which provides that an action for trespass upon, or injury to real property, must be commenced within three years. It is the contention of appellant that he may recover damages for the three year period immediately prior to the filing of the complaint. All parties agree that the cause of action for damages is founded upon a trespass upon real property. It would thus seem as though the action were barred. However, the question is not so simple of solution. It turns upon the question of fact, whether or not the trespass or nuisance is a permanent or continuing one. It is the position of respondents "that in 1926 plaintiffs' cause of action arose once and for all; that at that time, and for three years thereafter, they could have sued defendants for legal and equitable relief had they so desired; but that they did not do so, and that, therefore, Section 338 (2) C. C. P., fixing a three-year period of limitation on actions for trespass or injury to real property, is a bar to the present action." Appellants answer, "that the wrong of which they complain is a 'continuing trespass', giving rise to successive causes of action; that although the statute of limitations may run on all damages sustained three years or more before commencement of their action, it is no bar as to damages occurring the three years next preceding the commencement of their action."

The rule applicable here is thus stated in 75 A. L. R. 529:

"The question whether, in respect to a particular nuisance, a single cause of action is created, or whether successive actions may be maintained for repeated or recurring injuries, which turns upon the further question whether the nuisance is to be regarded as a permanent one or a continuing one," has arisen in many cases.

The undisputed evidence shows that the land injured by seepage in 1926 was some 1000 feet away from the parcel damaged in 1935. It is true the court found that the seepage had not *increased* during that time, but this is not a finding to the effect that the water continued to percolate and rise upon the same parcel of property. We think that the occurrence of the damage at such a widely separated place gave rise to a new cause of action. The damage to the first

parcel flooded may have been *permanent* in respect to that, but it was not a permanent damage to other portions of the real property not yet affected. The case of *Middelkamp* v. *Bessemer Irrigating Co.*, (1909) 46 Colo. 102 [103 Pac. 280, 23 L. R. A. (N. S.) 795], is chiefly relied upon by respondents to sustain their contention that there was but one cause of action which accrued in 1926. That decision does uphold their view, but the facts do not show damage by seepage to one parcel, and then damage to *another* widely separated portion of the land some ten years later. The case is predicated upon the fact that the irrigation ditch was "properly constructed." The obvious answer to that statement is that no ditch can be considered properly constructed which will seep and leak to the extent that it destroys adjoining land so far as agricultural purposes are concerned. If, as the court here finds, the ground traversed by the ditch was porous in character, it was the duty of the owners of such ditch to adopt the common method of sealing it with concrete or some similar material which would prevent the escape of water. Otherwise, one who uses such a ditch must assume the risk of damage to his neighbor. No one should be permitted to acquire a prescriptive right to continue a negligent act. We therefore hold that appellants are entitled to recover for any injury to their lands which was inflicted within three years prior to the commencement of the action. We might further add that the evidence as to the extent of damages was undisputed. The finding of the court that there was no damage is contrary to the evidence. It might be pointed out that there is an apparent contradiction in respect to such finding. In paragraph III, the court found that "*said lands and the crops thereon have been visibly affected, and the injury thereto apparent, commencing in the year 1926.*" In paragraph VI, the court found: "*That it is not true that the plaintiffs have been damaged by percolation or seepage . . .*" (Italics ours.)

As to the finding that plaintiffs were guilty of laches, respondents state that "the same facts which create the bar of the statute will also present the defense of laches." What we have said upon the defense of the statute of limitations is applicable here. In 10 Cal. Jur. 528, 529, sec. 66, it is stated:

"One of the principal factors in determining laches is acquiescence. . . . Acquiescence, to constitute laches, 'must be with the knowledge of the wrongful acts themselves and of their injurious consequences, it must be voluntary, not the result of accident, nor of causes rendering it a physical, legal or moral necessity, and it must last an unreasonable length of time, so that it will be inequitable even to the wrongdoer to enforce the peculiar remedies of equity against him, after he has been suffered to go on unmolested and his conduct apparently acquiesced in.' "

The evidence is insufficient to sustain such finding.

In conclusion, while we are reluctant to set aside findings upon the ground of the insufficiency of the evidence, we feel that the state of the record here leaves no other course open to us.

The judgment is reversed.

Respondents' petition for a hearing by the Supreme Court was denied December 22, 1941.