[Civ. No. 49715. Second Dist., Div. Two. Aug. 15, 1977.]

MacDONALD PROPERTIES, INC., et al.,
Plaintiffs, Cross-defendants and Appellants, v.
BEL-AIR COUNTRY CLUB,
Defendant, Cross-complainant and Respondent.

**COUNSEL**

Barry Brannen for Plaintiffs, Cross-defendants and Appellants.

Louis Lee Abbott and Timothy H. Ziemann for Defendant, Cross-complainant and Respondent.

## OPINION

**FLEMING, Acting P. J.**—Plaintiffs appeal an adverse summary judgment in this action for declaratory relief and to quiet title to real property bordering defendant Bel-Air Country Club's golf course. The judgment (1) declared valid and binding on plaintiffs certain building restrictions in the deed by which Bel-Air conveyed the subject property in 1936 to Hilda Weber, plaintiffs' predecessor in interest, and (2) granted Bel-Air a prescriptive easement in the subject property.

The undisputed facts reveal the following: In 1936 Bel-Air owned a golf course, portions of which abutted lot 35, block 3, tract 7656, in the County of Los Angeles. Hilda Weber owned the bulk of lot 35, a wooded plateau of over 7 acres jutting south from Bellagio Road almost 800 feet into Bel-Air's golf course. Weber had constructed a large mansion on lot 35 but was dissatisfied with the entrance to her property from Bellagio Road. Her entryway was steep, curving, and hazardous, and she wished to acquire a portion of the golf course to provide safer, more convenient access from Bellagio Road. In 1936 Bel-Air likewise had cause for dissatisfaction in that Weber's frontage on Bellagio Road separated the fifth green of its golf course from its sixth tee, thereby making surface movement between these two points difficult. Accordingly, Weber and Bel-Air entered into an arrangement for their mutual satisfaction. Bel-Air undertook to convey to Weber the subject property of this action, approximately four-fifths of an acre of portions of lots 33, 34, and 35 of tract 7656, comprising a long strip of land bounded by Bellagio Road on the northeast and by Bel-Air's sixth fairway on the southwest. Acquisition of the property would give Weber the entranceway she desired. However, the property served as rough for Bel-Air's sixth fairway, and misdirected golf balls fell on it every day. To prevent interference with this use of the property for golfing purposes Bel-Air inserted certain building restrictions in its deed of conveyance to Weber, restrictions hereinafter discussed in detail. In her turn, Weber agreed to convey to Bel-Air a permanent easement and right of way for the construction, operation, and maintenance of a pedestrian tunnel under her portion of lot 35 adjoining Bellagio Road, a tunnel which would link the fifth green of Bel-Air's golf course with its sixth tee.

No money changed hands in the execution of this arrangement between Bel-Air and Weber. Reciprocal conveyances were recorded on 28 August 1936, under which Weber granted the tunnel easement to Bel-Air, and Bel-Air deeded the subject property to Weber. Bel-Air's deed contained the building restrictions here in issue, and, additionally,

reserved to Bel-Air a bridle trail easement over part of the property. In November 1950 plaintiff Hilton purchased the entire Weber property and mansion, including the subject property, and in March 1963 Hilton transferred a remainder interest in the property to plaintiff MacDonald Properties.

The bridle trail easement is no longer an issue because Bel-Air disclaimed all interest in that easement to facilitate its motion for summary judgment on the issue of building restrictions.[1] Restrictions 1 and 3, provide: "Restrictions. 1. That said premises shall be used only in connection with the use of Lot 35 in Block 3 of said Tract No. 7656, for the purpose of erecting a gate lodge or other buildings or structures which shall make the use of said Lot 35 more convenient for residence purposes. That no such gate lodge, outbuildings or other structures shall be moved from any other place onto said premises, nor erected on said premises before a residence shall have been completed on said Lot 35, provided, however, that any structure herein permitted by these restrictions may be erected simultaneously with a residence to be erected on said Lot 35. Any structure constructed on said premises shall be located not nearer than twenty (20) feet from any boundary line of said premises, provided, however, that this restriction as to location of structures may be waived or modified by the architectural supervising committee hereinafter provided for.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"3. That no structure, except as hereinabove provided, shall ever be erected or allowed on said premises."

The deed provides in paragraph 9 that its restrictions constitute express conditions subsequent, breach of which gives rise to a right of reverter in the grantor, and in paragraph 11 that the restrictions continue in effect until 31 December 1998.

---

[1]The evidence showed that the bridle trail had been abandoned about 1946. The court's judgment provided:

"c. By virtue of the Disclaimer, Defendant its successors and assigns, possess no interest adverse to Plaintiffs, or either of them, in the easement and right of way for a bridle trail described in the Weber Deed and therein reserved to Defendant."

On this appeal plaintiffs maintain that the judgment does not adequately quiet title with respect to the bridle trail easement. Since the judgment decrees that neither Bel-Air nor its successors possess any bridle trail easement under the Weber deed, plaintiffs have been given the relief they sought.

The trial court found that restrictions 1 and 3 of the Weber deed are valid and binding on plaintiffs and further found that Bel-Air had acquired a prescriptive easement to use the subject property as rough in connection with its golf course. The relevant portions of the judgment are:

"b. The restrictions contained in the Weber Deed and, specifically, Restrictions 1 and 3 thereof (the enforceability of which is denied by the Complaint) and the rights and remedies in respect thereto provided in Restrictions 9 through 13, inclusive, of the Weber Deed are valid, viable and binding upon Plaintiffs. . . .

"3. As to the cross-complaint and answer thereto:

"a. Title to the following described easement and servitude is declared vested in defendant, to wit:

"An easement and servitude across and upon the entirety of the Subject Property to use the same as a 'rough' area immediately adjacent to a fairway of Defendant's golf course, that is, an area where golf balls and other objects are frequently driven or cast in the ordinary pursuit of the game of golf, which area is regularly entered by Defendant, its officers, agents, employees, and members to retrieve such golf balls or other objects. A further incident to such easement and servitude is the right of Defendant, its officers, agents, employees, and members, to utilize the same without risk of injury or liability to persons or improvements upon the Subject Property, with consequent limitation of the use and improvement of the Subject Property to those uses which do not place persons or property in hazard from exercise of Defendant's rights to so utilize the Subject Property.

"b. The said easement and servitude is appurtenant to that real property owned by Defendant, adjoining the Subject Property . . .

"c. The above defined title of Defendant to the said easement and servitude is forever quieted against any and all claims of Plaintiffs, or either of them, or any person claiming through or under them, or either of them; and each of Plaintiffs and all such persons are enjoined from asserting any claim whatsoever adverse to Defendant in or to said easement and servitude or inconsistent therewith; and each of Plaintiffs and each of said persons is further enjoined from obstructing, impeding or interfering with Defendant's use and enjoyment of said easement and servitude."

Plaintiffs contend: (1) the building restrictions are not enforceable as covenants at law (Civ. Code, § 1468) or as equitable servitudes; (2) the evidence does not support summary judgment for a prescriptive easement in Bel-Air because (a) no evidence establishes an adverse or hostile claim to the property, (b) a grantor cannot acquire prescriptive rights in property he has conveyed in fee, and (c) "the presumptive easement is inherently incredible"; (3) summary judgment for Bel-Air was improper because plaintiffs' complaint raised factual issues of changed conditions of the property rendering the building restrictions invalid; (4) a triable issue of fact existed with respect to plaintiffs' alleged consent to the prescriptive use of the subject property as rough; and (5) the judgment did not properly quiet title in plaintiffs regarding the bridle trail easement. (See fn. 1 for discussion of point 5.)

## I

■ Technically, the building restrictions of the Weber deed are drafted in the form of conditions subsequent with right of reentry in the grantor (Bel-Air). Where such a condition appears in a grantor's deed to property, as here, a court of equity will enforce it on behalf of the grantor or his transferee, unless it is shown that changed circumstances make such enforcement inequitable. (*Arrowhead Mut. Service Co.* v. *Faust* (1968) 260 Cal.App.2d 567, 578 [67 Cal.Rptr. 325]; *Shields* v. *Bank of America* (1964) 225 Cal.App.2d 330, 334-335, 338 [37 Cal.Rptr. 360].) ■ But because conditions subsequent may result in forfeiture, they are disfavored at law and normally interpreted as covenants (Civ. Code, § 1442). We so interpret the restrictions here.

Plaintiffs argue that the restrictions interpreted as covenants are defective, in that covenants burdening land for the benefit of other property do not run with the land and are not enforceable against subsequent purchasers unless the restrictions in the original deed particularly describe the property to be benefited (Civ. Code, § 1468). Such, they argue, was not the case here, for the Weber deed fails to particularly describe the property of Bel-Air to be benefited by the restrictions. (See, e.g., *Ross* v. *Harootunian* (1967) 257 Cal.App.2d 292, 294-296 [64 Cal.Rptr. 537].)

This argument is technically correct at law, because the deed contains no particular description of the dominant tenement to be benefited, which is, of course, the sixth hole of Bel-Air's golf course. ■ Nevertheless a companion doctrine declares that burdensome covenants which do not run with the land may be enforced on behalf of the original

grantor or his assigns as equitable servitudes against transferees acquiring the property with actual or constructive notice of the restrictions, when failure to enforce the restrictions would produce an inequitable result. (*Los Angeles etc. Co.* v. *S.P.R.R. Co.* (1902) 136 Cal. 36, 43 [68 P. 308]; *Richardson* v. *Callahan* (1931) 213 Cal. 683, 686 [3 P.2d 927]; *Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 762-764 [32 Cal.Rptr. 488].) As the Supreme Court observed in *Richardson* v. *Callahan, supra,* at page 686, "The marked tendency of our decisions seems to be to disregard the question of whether the covenant does or does not run with the land and to place the conclusion upon the broad ground that the assignee took with knowledge of the covenant and it was of such a nature that when the intention of the parties coupled with the result of a failure to enforce it was considered, equity could not in conscience withhold relief." Moreover, mere constructive notice of the covenant is sufficient to make it enforceable against the transferee. (*Russell* v. *Palos Verdes Properties, supra,* at p. 764.) While it is clear that building restrictions for the benefit of an entire tract cannot be enforced against a grantee when the restrictions have not been inserted in the original grant deed from the covenantee (*Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213]; *Werner* v. *Graham* (1919) 181 Cal. 174 [183 P. 945]; *Ross* v. *Harootunian* (1967) 257 Cal.App.2d 292, 294-295 [64 Cal.Rptr. 537]), such a limitation has no relevancy here, for the pertinent building restrictions were set out in the Weber deed and recorded in 1936, thus affording plaintiffs constructive notice of the restrictions and probably actual notice as well. (They do not deny notice.) We conclude that the cause is technically governed by the equitable servitude rule of *Richardson* v. *Callahan* (1931) 213 Cal. 683 [3 P.2d 927], and, unless plaintiffs can show that enforcement is inequitable, the building restrictions are enforceable in equity.

Plaintiffs have failed to show why enforcement would be inequitable. On the record it is undisputed that Bel-Air has been using the land adjacent to the subject property as part of its golf course since prior to 1936 and that the subject property has served as rough for the sixth hole of the golf course throughout that period. It is likewise undisputed that plaintiffs had actual knowledge of this use, which includes the frequent driving of golf balls onto the subject property. No showing was made of changed conditions or changed use of Bel-Air's property. In their original complaint plaintiffs alleged changed conditions only with respect to the bridle trail, which they claimed had been abandoned. (As stated in fn. 1, Bel-Air disclaimed any rights in that trail.) In the court below, plaintiffs construed the building restrictions as protection for the bridle trail. On appeal, plaintiffs now assert they should have been given

a chance to prove other changed conditions since 1936—such as alteration of zoning laws and construction of residences adjacent to defendant's golf course. Plaintiffs, however, never alleged any ultimate facts which would show that such changes had any bearing on enforcement of the building restrictions. Bel-Air submitted uncontradicted affidavits establishing that the reasons for the restrictions were to preserve the sylvan quality of the land adjoining the sixth hole and avoid liability for golf ball injuries on the subject property. Such evidence was admissible to explain the purpose of the restrictions. (*Townsend* v. *Allen* (1952) 114 Cal.App.2d 291, 298 [250 P.2d 292]; see *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521-523 [67 Cal.Rptr. 761, 439 P.2d 889]; *Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].) Plaintiffs offered no evidence of changed conditions that would outdate respondent's purpose for the imposition of the restrictions. Accordingly, no showing was made that it would be inequitable to enforce the restrictions on Bel-Air's behalf, and the court properly entered summary judgment upholding the validity and enforceability of the building restrictions.

## II

■ The question of a prescriptive easement to use the subject property as rough for Bel-Air's golf course and to allow players to enter upon the property to retrieve golf balls is more difficult. A prescriptive easement in property may be acquired by open, notorious, continuous, adverse use, under claim of right, for a period of five years. (Code Civ. Proc., § 321; Civ. Code, § 1007; *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 950 [119 Cal.Rptr. 139].) The owner of the servient property must have actual knowledge of its use. Once knowledge of use is established, as was done here without contradiction, the key issue becomes one of permissive use under license as against adverse use under claim of right. The decisions on the burden of proving adverse use are widely divergent. *Clarke* v. *Clarke* (1901) 133 Cal. 667 [66 P. 10], puts the burden on the person asserting the easement to establish that his use was adverse under claim of right; whereas *Fleming* v. *Howard* (1906) 150 Cal. 28 [87 P. 908], holds that undisputed use of an easement for the prescriptive period raises a presumption of claim of right and puts the burden on the party resisting the easement to prove permissive use. Each decision has acquired a following: e.g., *Tarpey* v. *Veith* (1913) 22 Cal.App. 289, 292 [134 P: 367], and *Case* v. *Uridge* (1960) 180 Cal.App.2d 1, 506 [4 Cal.Rptr. 85], following *Clarke*; and *Chapman* v. *Sky L'Onda etc. Water Co.* (1945) 69 Cal.App.2d 667, 678 [159 P.2d 988]; and *Wallace* v. *Whitmore* (1941) 47 Cal.App.2d 369, 372-373 [117 P.2d 926], following *Fleming*.

We think the better and more widely held rule is that continuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence. (See 28 C.J.S., Easements, § 68, p. 736, fn. 99, and numerous California cases cited therein in 1977 Supp. to 28 C.J.S.) This rule, articulated in *Wallace* v. *Whitmore, supra,* 47 Cal.App.2d 369, 372-373, was quoted as controlling in *Miller* v. *Johnston* (1969) 270 Cal.App.2d 289, 294 [75 Cal.Rptr. 699], as follows: " 'It is true that title to an easement for the use of a private roadway must be established by clear and satisfactory evidence that it was used for more than the statutory period of five years openly, notoriously, visibly, continuously and without protest, opposition or denial of right to do so. But clear and satisfactory evidence of the use of the road in that manner creates a *prima facie* title to the easement by prescription. Such evidence raises a presumption that the road is used with an adverse claim of right to do so, and in the absence of evidence of mere permissive use of the road, it will be sufficient upon which to sustain a judgment quieting title to the easement therein.' (*Wallace* v. *Whitmore* (1941) 47 Cal.App.2d 369, 372-373 [117 P.2d 926]. See also *Van Amersfoort* v. *Young* (1951) 105 Cal.App.2d 22, 25-27 [332 P.2d 569]; *Shonafelt* v. *Busath* (1944) 66 Cal.App.2d 5, 7-9 [151 P.2d 873]; *Crawford* v. *Lambert* (1934) 136 Cal.App. 617, 621 [29 P.2d 428]; and *Wells* v. *Dias* (1922) 57 Cal.App. 670, 672 [207 P. 913]. Cf. *Peck* v. *Howard* (1946) 73 Cal.App.2d 308, 325-326 [167 P.2d 753]; and *Nelson* v. *Robinson* (1941) 47 Cal.App.2d 520, 526 and 528 [118 P.2d 350].)"

At bench, the affidavits of both parties establish without contradiction that Bel-Air's use of the area as rough for its sixth hole continued for over forty years—from sometime prior to 1936 to the filing of suit in 1974—and was well known to plaintiffs. Furthermore, in addition to the evidence of open and continuous use referred to in *Miller* v. *Johnston, supra,* we have at bench the crucial fact of the Weber deed with its building restrictions on the subject property designed to preserve Bel-Air's then existing use of its sixth hole. Extrinsic evidence established that such was the motivation for the restrictions, and no other plausible justification for them exists. The conduct of Bel-Air subsequent to the execution of the deed manifests the open and continuous use inferentially contemplated by the parties to the deed and effectuated through the creation of building restrictions. It is true that the deed does not in so many words grant an easement to Bel-Air to continue to use the property as rough for the sixth hole of its golf course. But the deed's existence, coupled with Weber's acquiescence in Bel-Air's use of the subject property as rough for many years (1936 to 1950), provides conclusive

evidence that Bel-Air's use was adverse, under claim of right, and accepted as such by the owner of the subject property.

Plaintiffs did not acquire their interest in the subject property until later—1950 for Hilton, 1963 for MacDonald. Accordingly, if open and continuous use of property for five years is presumed to be adverse and in the absence of other evidence establishes an easement, Bel-Air had already perfected its easement against plaintiffs' predecessor in title (Weber). Even if we disregard the historic record and assume that prescription did not begin until title to the servient property was acquired by its present owners, the evidence establishes that plaintiffs knew of the fall of golf balls on the subject property and their retrieval by defendant's players and agents (knowledge which plaintiffs concede) and failed to protest Bel-Air's continuous use of the subject property as rough, a failure that lasted 24 years in respect to Hilton and 11 years in respect to MacDonald. Nor did plaintiffs erect permissive use signs or take other steps to preserve their rights as they might have done (see Civ. Code, § 1008), a significant evidentiary fact in most jurisdictions. (See 28 C.J.S., Easements, § 70, p. 745, fn. 19; e.g., *Burnham* v. *Burnham* (1931) 130 Me. 409 [156 A. 823, 824].) Clearly, it did not occur to plaintiffs to challenge Bel-Air's right to use the subject property until challenge acquired the appearance of profitability in the context of plaintiffs' desire to build.

Plaintiffs raise the spectre that if Bel-Air prevails on the easement issue, all homeowners living near golf courses on whose property golf balls sometimes fall will find themselves subject to easements in favor of the golf course property if they permit players to retrieve golf balls. However, it is unlikely that many homes are so situated as to show the continuous usage without protest that occurred here (a minimum of "several balls per day frequently and regularly" driven onto the property and retrieved therefrom, amounting to "between three and five percent of the balls teed off from" a given location) or that the written record of the relationship between adjoining landowners will show as clearly as here what the intended use of the property had been. As discussed earlier, the Weber deed furnishes powerful evidence of the parties' actual intent that Bel-Air should continue to use the subject property as *rough in the same fashion that it had when it owned the property in fee.* Continuity of usage is really all the trial court granted Bel-Air by way of this unusual, but under the circumstances not incredible, prescriptive easement.

Plaintiffs argue that a grantor cannot acquire prescriptive rights against his grantee. We find no logical support for such a rule, and we find dictum to the contrary in the statement of the Supreme Court that a grantor can acquire title by adverse possession against his grantee. (*Allen v. Allen* (1911) 159 Cal. 197, 200 [113 P. 160].) Bel-Air's grant of the fee interest in the subject property to Weber to give her better access to her property was not inconsistent with Bel-Air's continued use of the subject property adjacent to its sixth fairway as rough for misdirected golf balls.

Finally, no triable issue of fact existed on the subject of consent to the user, because, as stated, all affidavits indicated that plaintiffs knew of the use of the property and made no protest against it.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied September 12, 1977, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1977.