The STANLEY WORKS, et al., Plaintiff,

v.

SNYDERGENERAL CORPORATION,
et al., Defendant.

Nos. CV–F–88–530 REC,
CV–F–89–822 REC.
Bankruptcy No. 184–20269.

United States District Court,
E.D. California,
Fresno Division.

Oct. 25, 1990.

William Campbell, Randall Henderson, Paul, Hastings, etc., Los Angeles, Cal.

Daniel W. Crowe, Visalia, Cal.

Ronald G. Aronovsky, Orrick, Herrington, etc., San Francisco, Cal.

David S. Poole, Los Angeles, Cal.

Gordon Atkinson, Palo Alto, Cal.

Steven McGee, Fresno, Cal.

W. Toliver Besson, Santa Monica, Cal.

Philip B. Laird, Visalia, Cal.

## DECISION AND ORDERS RE MOTIONS FOR SUMMARY JUDGMENT

COYLE, District Judge.

On September 24, 1990, the court heard oral argument in connection with Plaintiffs' Motion for Partial Summary Judgment, SSP Industries' Motion for Summary Judgment, Sunstar Defendants' Motion for Partial Summary Judgment, Snydergeneral's Motion for Partial Summary Judgment, Sunstar Defendants' Motion for Summary Judgment, and Defendants' Cross–Motion for Summary Judgment.

Upon due consideration of the written and oral arguments of the parties and the record herein, the court concludes that there are several issues which must or can be resolved at this juncture. However, beyond the issues resolved herein, the court rules that summary judgment is not appropriate.

A. *CERCLA Liability for "Passive" Release or Disposal of Hazardous Substances.*

The First Claim for Relief in the First Amended Complaint alleges in pertinent part:

30. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner or operator of a ... facility,

(2) any person who at the time of *disposal* of any hazardous substance owned or operated any facility at which such hazardous substances were *disposed* of, ... shall be liable for ...

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan ....

42 U.S.C. § 9607(a)(1), (2) and (B) [sic].

31. The *disposal*, dispersal, discharge, migration, leaching, leaking and/or *release* of TCE and other hazardous substances that occurred at the Sunstar Parcel between 1961 and the present, as alleged above, constitutes *'releases'* of hazardous substances under Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

. . . . .

33. Defendants ... are jointly and severally liable for the necessary costs of response and remedying the *releases* alleged above because they were the owners or operators of the Sunstar Parcel, in fact or by operation of law, at the time hazardous substances were *disposed* of and *released* there or because they are the present owners and operators of the Sunstar Parcel or SSP Parcel.

34. As a direct and proximate result of the *release* and threatened *release* of hazardous substances ..., plaintiffs have incurred necessary costs of response.... [emphasis added].

The statute upon which the First Amended Complaint relies, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a ... facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . . . .

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for

. . . . .

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

The term "release" alleged in Paragraph 31 and set forth in Section 9607(a)(4) is defined in pertinent part in 42 U.S.C. § 9601 to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." However, the term "disposal" as used in 42 U.S.C. § 9607(a)(2) and as alleged to have occurred in Paragraph 30 is defined in 42 U.S.C. § 9601(29) to "have the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C. § 6903]." 42 U.S.C. § 6903(3) defines the term "disposal" to mean "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste into or on any land or water so that such ... hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." [1]

---

1. It appears from the structure of Section 9607(a)(4) that the phrase "release or threatened release" applies only to persons described in that provision. However, in *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1043 n. 16 (2d Cir.1985), the Second Circuit explained:

16. The phrase 'from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance' is incorporated in and seems to flow as if it were a part only of subparagraph (4), but it is quite apparent that it also modifies subparagraphs (1)–(3) inclusive. When the Senate's compromise bill was printed in the Congressional Record 2 at the start of the debate, ... the predecessor of § 9607 ... followed the printing format of the Senate version as reported ...; in each case subparagraph (4) ended with the words 'selected by such person,' and the commencing clause

■ A major legal issue that must be resolved before trial in this action involves the extent to which the ongoing leaking, leaching and migration of hazardous substances constitutes a release or disposal giving rise to liability under CERCLA under Section 9607(a)(2).

There is a split of authority whether the "passive" leaching or migration of hazardous substances constitutes "disposal" within the meaning of the statutes set forth above. The court has reviewed the cases supporting a finding of "disposal", *see State of New York v. Shore Realty Co.,* 759 F.2d 1032, 1045 (2d Cir.1985), *United States v. Waste Industries, Inc.,* 734 F.2d 159, 163–165 (4th Cir.1984), *United States v. Price,* 523 F.Supp. 1055, 1073 (D.N.J. 1981), *aff'd,* 688 F.2d 204 (3d Cir.1982), *United States v. Ottati & Goss, Inc.,* 630 F.Supp. 1361, 1399–1400 (D.N.H.1985), *CPC Intern., Inc. v. Aerojet–General Corp.,* 731 F.Supp. 783, 789 (W.D.Mich. 1989), *Emhart Industries, Inc. v. Duracell Intern. Inc.,* 665 F.Supp. 549, 574 (M.D.Tenn.1987), *In re Hemingway Transport, Inc.,* 108 B.R. 378, 382 (Bky.D.Mass. 1989), as well as the cases supporting a conclusion to the contrary, *see Ecodyne Corp. v. Shah,* 718 F.Supp. 1454, 1455–1457 (N.D.Cal.1989), *Cadillac Fairview/California Inc. v. Dow Chemical Co.,* 21 ERC 1108, 1113 (BNA 1985), *rev'd on other grounds,* 840 F.2d 691 (9th Cir.1988), and *In re Diamond Reo Trucks, Inc.,* 115 B.R. 559 (W.D.Mich., 1990).

First of all, this court is not bound to follow the decisions of either the Central or the Northern Districts of California. Equally, this court is not bound by any of the decisions by other circuits or districts. This is not to state that these decisions cannot be relied upon in resolving this issue. It just means that the issue of passive disposal liability under Section 9607(a)(2) is one of first impression in this court.

Plaintiffs argue that this court should not follow *Ecodyne.* First of all, they argue that *Ecodyne* is factually distinguishable from that before the court:

*Ecodyne* ... involved essentially the equitable allocation of responsibility between the past and present owners of the *same* site. To the extent that SSP argues that *Ecodyne* should be interpreted broadly to shield past owners of a contaminated facility from liability when those contaminants continue to release into the soil and groundwater and migrate downgradient to a different parcel, plaintiffs ... submit that *Ecodyne* is contrary to the weight of authority and should be limited to its facts.

However, while there is no question that *Ecodyne* is contrary to the weight of authority, the court cannot logically fathom the factual distinction plaintiffs are attempting to make. It seems to the court that, right or wrong, *Ecodyne* (or any of the other cases cited pro or con) should have the same results whether the past and present and subsequent owners of a contaminated parcel are suing each other or the owner of a parcel adjacent to a contaminated parcel is suing its past and present and subsequent owners for the response costs for the clean up of the adjacent parcel. The court can certainly see that a court's sympathies might be different but it cannot see how the statute at issue would be interpreted differently.

■ Plaintiffs further argue that *Econdyne* neither discusses nor gives deference to the EPA's interpretation of CERCLA. However, as statutory interpretation proceeds at three exclusive levels. The first is plain meaning. If the statute cannot be interpreted by its plain meaning, the court looks next to its legislative history. If the statute still cannot be interpreted, the court looks to the interpretation given the provision by its administering agency. *See Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801 (9th Cir.1989). The

'from which there is a release' was printed as a new line, supporting the reading we give it above. The latter clause evidently slipped into subparagraph (4), as sometimes happens in the waning days of a session, when the

entire Senate compromise was reprinted prior to the final vote ... The change thus appears to have been simply a printer's error.

*Accord Ascon Properties v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989).

district court in *Ecodyne* relied solely upon the doctrine of plain meaning and, therefore, did not need to reach agency interpretation. Moreover, agency interpretation becomes relevant only if neither the plain meaning nor the legislative history allow interpretation of the provision.

More to the point, plaintiffs argue that *Ecodyne*'s interpretation of Section 6903(3) (the provision defining the term "disposal") is not supported by the plain language of the definition of disposal in section 6903(3) and neither considers the statute as a whole nor Congress' purpose in enacting CERCLA. As was explained in *Wilshire Westwood Assoc., supra,* 881 F.2d at 803–804:

> The plain meaning of a statute is the starting point for its interpretation ... 'A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' ... However, '[d]eparture from a literal reading of statutory language may ... be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose ...' 'If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress.' ... Because 'CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment[, courts] are ... obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes ... "in the absence of a specific congressional intent otherwise."' ... However, '[t]his court must look beyond the express language of a statute where a literal interpretation "would thwart the purpose of the over-all statutory scheme or lead to an absurd result."' ... And "[s]tatutes should not be construed to make surplusage of any provision."
> ....

Plaintiffs here argue that *Ecodyne* is based on what they describe as a "fundamental philosophical discomfort" with the strict liability provisions of CERCLA. In so arguing, plaintiffs cite *City of Philadelphia v. Stepan Chemical Co.,* 18 Env't. L.Rep. 20,133, 1987 WL 15214 (E.D.Pa. 1987). In that case, the district court held the City of Philadelphia liable for response costs for hazardous waste dumped in a municipal landfill in violation of city rules but with the help of two city employees who accepted bribes. The district court held:

> Obviously, a requirement that covered persons under section [9607(a)] be limited to those who caused, created or knew of the creation of the hazardous condition would be inconsistent with the statute. Moreover, a causation requirement would make superfluous the statutory defenses, which serve as a substitute for such a requirement.

Plaintiffs contend:

> The decision in *Ecodyne,* in effect, 'amends' CERCLA to impose a 'fault system' before the past owners, who purchased the site of continued releases of contamination after the introduction of hazardous substances, could be held liable. This decision conflicts with Congress' purpose in enacting CERCLA and the strict liability system it imposed. As noted by the court in *City of Philadelphia,* any requirement of causation would render nugatory the defenses Congress established in section 9607(b)(3).

Plaintiffs further argue in a footnote:

> Owners of property at which disposal has occurred are liable whether or not they engaged in active disposal practices. The *Ecodyne* decision appears philosophically disposed against this approach. However, it was Congress' choice to make and in electing to adopt such a sweeping concept of liability, it made a constitutionally valid choice. Accepting that there may be a level of 'unfairness' to this legislative scheme, is it any more fair to define the concept of responsible owners under CERCLA merely by accident of time? The owners of the property at the time active disposal occurred are liable without any regard to whether they actively participated in the disposal; the current owner of the

**664**

property is liable without regard to state of knowledge or fault. It is certainly more consistent with this legislative scheme than not to include within the sweep of liability past owners who owned the property (and thus had control over it—a common element linking all of these categories of liability) during a period in which the property was actively discharging contaminants into the environment.

The court finds these arguments against application of *Ecodyne* persuasive. Frankly, the court does not follow the analytical logic of the district court's interpretation of "disposal". Moreover, the court believes plaintiffs are right in their contention that the district court was uneasy about the strict liability ramifications of CERCLA. However, the defenses set forth in Section 9607(b)(3) obviate this concern. This especially is the case with respect to the defense set forth in Section 9607(b)(3) (and Section 9601(35) by virtue of its definition of "contractual relationship"), known as the "innocent landowner" defense. *See United States v. Pacific Hide & Fur Depot, Inc.*, 716 F.Supp. 1341 (D.Idaho 1989).

■ Defendants in their turn argue that this court should not follow the cases cited by plaintiffs. They note that several of the cases relied upon by plaintiffs did not involve CERCLA, but rather RCRA. However, this distinction is without merit. As noted in those cases, the statutory definition of the term "disposal" is identical under both statutory schemes.

However, while it is apparent that plaintiffs equate the terms "disposal" and "release", the Sunstar Defendants argue that a disposal is not the equivalent of a release and that, if the court interpreted the two as equivalents, the term "disposal" would become mere surplusage, a result Congress would not have intended. The court is not persuaded that equating the two terms as argued by plaintiffs means that the term "disposal" is surplusage. If that were true, then no "disposal" could ever be a release and that cannot be what Congress intended. At oral argument, it was contended that a construction to include passive disposal as argued by plaintiffs would in effect write the innocent purchaser defense out of CERCLA. The court does not agree. While it is no doubt more likely that the innocent purchaser defense will succeed in circumstances involving passive disposal, this will not always be the case.

B. *Statute of Limitations—Pendent Causes of Action.*

The Sunstar Defendants, Snydergeneral and SSP contend that they are entitled to summary judgment with respect to the pendent causes of action alleged against them in the First Amended Complaint. While the court does not think summary judgment is appropriate that these claims are in fact barred by the three year statute of limitations set forth in California Code of Civil Procedure § 338(b), there are two issues which the court resolves now.

1. *Waiver.*

The first issue is that of waiver of the affirmative defense of the statute of limitations.

■ Snydergeneral and SSP alleged the statute of limitations as an affirmative defense in their respective Answers to the Complaint. However, it appears that neither Snydergeneral nor SSP filed and served an Answer to the First Amended Complaint. Pointing out that the First Amended Complaint supercedes the Complaint which no longer performs any function in the case, Wright, Miller & Kane, 6 *Federal Practice and Procedure* § 1476, p. 556 (1990), and that the statute of limitations is an affirmative defense which, if not specifically pled, is, as a general rule, waived and excluded from the case, Rule 8(c), Federal Rules of Civil Procedure; Wright & Miller, 5 *Federal Practice and Procedure* § 1278 (1990), plaintiffs contend that the respective failures by these defendants to file an Answer to the First Amended Complaint constitutes a waiver by them of this affirmative defense.

■ The court does not agree. From the court's research, the option to file an Answer to a First Amended Complaint lies with the defendant. Wright, Miller & Kane, *supra,* § 1476, pp. 558–559. The

defendant can do so if the First Amended Complaint makes allegations that change the theory or scope of the case. *Archie and Allan Spiers, Inc. v. United States*, 296 F.2d 757, 766, 155 Ct.Cl. 614 (1961); *Brown v. E.F. Hutton & Co., Inc.*, 610 F.Supp. 76, 78 (S.D.Fla.1985). However, a defendant might not be required to do so where the Answer to the Complaint has the effect of setting out the allegations upon which defendant relies. *LaGorga v. Kroger Company*, 407 F.2d 671, 673 (3d Cir. 1969). The court notes, moreover, that plaintiffs cite no authority that defendants are required to file an Answer to a First Amended Complaint.

■ Even if the court were to conclude that Snydergeneral and SSP should have filed an Answer to the First Amended Complaint setting forth the affirmative defenses, their failure to do so does not automatically equate to a waiver. "Rule 15(b) ... give[s] the trial court discretion to permit the amendment of the pleading over objection when it will promote the presentation of the merits of· the action, the adverse party will not be prejudiced by the sudden assertion of the defense, and will have ample opportunity to meet the issue." Wright & Miller, *supra*, § 1278, pp. 501–502. Here, there can be no question of prejudice to plaintiffs since they are also challenging the application of the statute of limitations on the factual merits without suggestion of surprise or prejudice.

Consequently, the court holds that these defendants have not waived the affirmative defense of the statute of limitations.[2]

### 2. *Continuing Nuisance.*

■ The second issue that needs to be resolved now is whether or not the conduct alleged in the First Amended Complaint sets forth a "continuing nuisance" as that term is defined by California law for purposes of accrual of the statute of limitations.

As explained in *Field–Escadon v. De-Mann*, 204 Cal.App.3d 228, 233–234, 251 Cal.Rptr. 49 (1988);

When a trespass is of a permanent nature, the cause of action accrues when the trespass is first committed ... 'Where the injury or trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action, and the entire cause of action accrues when the injury is suffered or the trespass committed.' ...

.    .    .    .    .    .

[T]he courts have held that the encroachment of buildings ..., walls, foundations, pipes and vents erected on another's property ..., and railroad tracks ... are permanent in nature and a cause of action for trespass would have accrued as of the date of completion of construction.

.    .    .    .    .

The salient feature of a continuing trespass or nuisance is that its impact may vary over time. The sewer line is not a continuing or recurring trespass or nuisance, which repeatedly disturbs the property, as in the case of the nuisance caused by the operation of an airport ... or by the operation of a cotton gin ... or by the operation of a slant drill which removed minerals from the plaintiff's adjacent property ... Nor does its impact on appellant's property gradually increase over time, such as in the case of encroachment by a building progressively leaning over the property line of the adjacent property....

In *Baker v. Burbank–Glendale–Pasadena Airport Authority*, 39 Cal.3d 862, 868–869, 218 Cal.Rptr. 293, 705 P.2d 866 (1985), the California Supreme Court explained:

... Whether a nuisance will be classified as continuing or permanent·depends not on the offending party's interest in continuing the nuisance, but on the type of harm suffered....

Two distinct classifications have emerged in nuisance law which determine the remedies available to injured parties and the applicable statute of limitations. On the one hand, permanent nuisances are of a type where ' "by one act a permanent

---

2. The court notes that Snydergeneral filed an Answer to the First Amended Complaint on October 1, 1990. The court is expressing no opinion whether such an action is timely.

injury is done, [and] damages are assessed once for all." ' ... The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land ..., a steam railroad operating over plaintiff's land ..., or regrade of a street for a rail system ... In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within three years after the permanent nuisance is erected ... Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence....

On the other hand, if a nuisance is a use which may be discontinued at any time, it is considered continuing in nature and persons harmed by it may bring successive actions for damages until the nuisance is abated....

The classic example of a continuing nuisance is an ongoing or repeated disturbance ... caused by noise, vibration or foul odor ... Indeed, even more substantial physical invasions of land have been held to be continuing in character ... [T]he distinction to be drawn is between encroachments of a permanent nature erected upon one's lands, and a complaint made, not of location of the offending structures, but of the continuing use of such structures ... The former are permanent, the latter is not.

In case of doubt as to the permanency of the injury the plaintiff may elect to treat a particular nuisance as permanent or continuing ... The importance of the plaintiff's election has long been recognized ... As the United States Supreme Court noted in [*U.S. v.*] *Dickinson* [331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947)] a case in which a landowner sued to recover damages after the government flooded his land, '[i]f suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet un-

certain. The source of the entire claim ... is not a single event; it is continuous.' ....

Snydergeneral refers the court to *Nelson v. Robinson*, 47 Cal.App.2d 520, 529–530, 118 P.2d 350 (1941). In *Nelson*, the defendants built an irrigation ditch along the boundary of plaintiff's property. In 1926, water seeped from the irrigation ditch onto a portion of plaintiff's property. In 1935, seepage occured at another point on plaintiff's property some 1,000 feet away from the site of the leak in 1926. Plaintiff brought suit for abatement of a nuisance and recovered. The Court of Appeal reversed. Snydergeneral argues that the analysis in *Nelson* is equally applicable to this case:

> Here, assuming plaintiffs' version of the facts to be true, contamination from the Sunstar Parcel migrated onto the Stanley–Bostich Parcel at some point unknown in the past, but obviously well before 1984. Just as the seepage that occurred in 1926 in the *Nelson* case was considered to be permanent, so too is the migration of contamination discovered by plaintiffs in 1984 permanent. 1984 is ... well outside the statute of limitations for a case filed in 1988. Plaintiffs have offered this Court no evidence to indicate that the current migration of contamination is any different or greater than it was in 1984. Similarly, plaintiffs have not introduced any evidence indicating that the contamination is entering their property at some point widely separated from the point of entry in 1984 or that the contamination is affecting some new, distant portion of the Stanley–Bostich Parcel. Because the plaintiff in *Nelson* was able to demonstrate a new, different injury occurring within the statute of limitations, she was permitted to pursue her claim. Here, however, plaintiffs have made no such showing.

In the court's opinion, *Nelson* is distinguishable from this case and has no relevance to the resolution of the issue before the court. In this case, the migration or seepage or leaching of TCE from the defendants' parcel into plaintiffs' parcel has been

a continuous process which is continuing even today even though the actions which caused the TCE to get into defendants' parcel so it could migrate ended some years ago. This is a very different situation from two separately located leakages from a irrigation ditch occurring ten years apart.

In the court's judgment, looking at the types of situations cited above, this case involves a "continuing nuisance". Snydergeneral argues that this is not similar to the repetitious discharge of a sewer or the repetitive landing of an aircraft at an airport:

> Rather ... the plume of contamination extends across the entire width of the Stanley–Bostich Parcel and extends to a depth of more than 100 feet ... [T]his contamination has been known to exist since at least June of 1984 and, given the extent of the plume to the East, it is likely that the initial contamination of the Stanley–Bostich Parcel existed years earlier. It is difficult to conceive of a nuisance that is several hundred feet wide and more than 100 ... feet deep as being anything but permanent.

The court cannot agree. Snydergeneral would have the court believe that this all happened at once. However, it cannot be disputed that it did not and the contamination by migration from defendants' parcel continues today. The fact that the area of contamination is getting bigger as the years go by does not convert the nuisance into a permanent nuisance. As noted above, "the salient feature of a continuing trespass or nuisance is that its impact may vary over time." *Field–Escadon v. De-Mann, supra.*

Accordingly, the court holds that the actions complained of in the First Amended Complaint constitute a continuing nuisance as a matter of law and that plaintiffs are entitled to summary judgment with respect to this issue as it relates to the statute of limitations.

## C. *Laches*

### 1. *CERCLA Liability.*

Snydergeneral raises an issue concerning the availability of laches as an affirmative defense to its liability pursuant to plaintiffs' claims against it under CERCLA.

There is a split of authority regarding whether equitable defenses are available to foreclose liability under Section 9607(a). There is a line of cases holding that equitable defenses are available, *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1057–1058 (D.Az.1984), *aff'd on other grounds*, 804 F.2d 1454 (9th Cir.1986); *see* cases cited in *United States v. Marisol, Inc.*, 725 F.Supp. 833, 844 (M.D.Pa.1989). However, as explained in *Kelley v. Thomas Solvent Co.*, 714 F.Supp. 1439, 1445 (W.D.Mich.1989):

> In keeping with this broad liability scheme, the only substantive affirmative defenses to liability under CERCLA are those found in section [9607(b)]. The exclusivity of section [9607(b)] defenses is explicitly discussed in section [9607(a)] which provides for liability '[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this section.' As a result of this unequivocal intent, a strong majority of courts have held that liability under CERCLA section [9607(a)] is subject only to the limited defenses provided in section [9607(b)].

*See* cases cited at 714 F.Supp. at 1445 n. 3[3]; *see* cases cited in *United States v. Marisol, id.,* 725 F.Supp. at 844. This latter line of cases does not mean that equitable considerations are never relevant in actions under CERCLA. As further explained in *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994 (D.N.J.1988):

> While equitable considerations are applicable in allocating the amount of contribution between parties under CERCLA, these defenses go to the issue of damages ... At present, the only relief

---

3. One of the cases listed in this footnote is an unpublished opinion from the Eastern District. In the case, *United States v. Cramblit*, No. 84–0188 RAR (June 24, 1984), Judge Ramirez expressed his conviction in dicta that "[t]he Court is not persuaded that equitable defenses can ever be raised as defenses to an action brought under Section [9607] of CERCLA."

which Southland seeks is a declaratory judgment on the issue of Ashland's CERCLA liability. The plant's alleged discounted price, the damage caused by Southland's own waste disposal practices and any other equitable considerations can all be raised at trial to mitigate damages.

In the court's judgment, this latter line of cases expresses the better view. Thus, to the extent Snydergeneral contends that the equitable defense of laches precludes its liability under Section 9607(a), the contention is rejected.

### 2. Pendent Claims.

For the same reasons that the court holds *supra* that defendants did not waive the affirmative defense of the statute of limitations with respect to the pendent claims, the court holds that the affirmative defense of laches is not waived.

### D. Liability of The Stanley Works Under CERCLA.

As noted, the defendants have joined together to seek summary judgment on their counterclaims against plaintiffs. There is an issue that should be resolved at this juncture with respect to these counterclaims.

■ The Stanley Works argues that it is not a responsible party within the provisions of Section 9607(a)(1) or (a)(2). According to the First Amended Complaint, The Stanley Works acquired the Bostich Division of Textron, Inc. in 1986. Stanley–Bostich, Inc. is a wholly-owned subsidiary of The Stanley Works. The Bostich Division of Textron, Inc. acquired the Stanley–Bostich Parcel in 1966.

Defendants respond that the Purchase and Sale Agreement dated January 24, 1986 between The Stanley Works and Textron, Inc. provides that The Stanley Works is a responsible party under CERCLA by virtue of contract.

The court agrees. The Ninth Circuit affirmed summary judgment holding that a settlement agreement and release, which settlement agreement and release did not mention CERCLA, barred a purchaser's action against the seller under CERCLA

seeking to recover response costs for cleanup. *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1460–1463 (9th Cir.1986). As defendants argue, there is no logical reason why a party cannot also contractually assume obligations under CERCLA.

### E. Snydergeneral's Counterclaim.

■ Plaintiffs point out that Snydergeneral has not filed a counterclaim against them. Consequently, plaintiffs contend that Snydergeneral is not entitled to proceed with the other defendants as if it did file a counterclaim.

Snydergeneral replies that this argument exalts form over substance:

While SnyderGeneral may not have filed a formal counterclaim against plaintiffs, it did file a third-party claim against Textron, Inc. And, as noted ..., The Stanley Works has contractually agreed to assume all liability of Textron, Inc. arising out of acts of environmental contamination by Textron. Accordingly, The Stanley Works is ultimately the responsible party for Snydergeneral's claim against Textron.

Snydergeneral's argument does not make sense. The Third Party Complaint filed by Snydergeneral against Textron alleges in pertinent part as follows:

12. In the event that the Court determines that Plaintiffs [The Stanley Works and Stanley–Bostich, Inc.] are entitled to reimbursement or partial reimbursement from Third–Party Plaintiff [Snydergeneral] of monies Plaintiffs spent to investigate and clean up the contamination on or under its property or entitled to any other relief, Textron, Inc. is responsible for such liability to Plaintiffs and Third–Party Plaintiff is entitled to be partially or fully indemnified by or receive contribution from Textron, Inc.

This allegation is the reverse of what Snydergeneral is arguing should allow it to proceed against The Stanley Works in the absence of a counterclaim.

The court notes that on October 1, 1990, Snydergeneral filed a Motion for Leave to File a Counterclaim Against Plaintiffs. This motion is set to be heard on October

29, 1990.  The court expresses no opinion herein with respect to the merits or lack thereof of Snydergeneral's motion.  The court merely holds herein that the present state of the pleadings does not allow Snydergeneral to proceed against plaintiffs by counterclaim or third party complaint.

ACCORDINGLY, IT IS ORDERED that the various motions for summary judgment and for partial summary judgment are denied except as set forth herein.